IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRADFORD LYTTLE, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 07 C 1406 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| JOHN KILLACKEY, OFFICER JONES | ) | |
| (#4079), OFFICER E. SHIELDS (10169), | ) | |
| UNKNOWN POLICE OFFICERS and | ) | |
| EMPLOYEES of the City of Chicago, and the | ) | |
| CITY OF CHICAGO | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Bradford Lyttle ("Lyttle") filed suit against Defendants John Killackey, Officer Jones,

Officer E. Shields, Unknown Police Officers and Employees of the City of Chicago (collectively,

"Officers"), and the City of Chicago ("the City"). The City filed a Motion to Dismiss under Federal

Rule of Civil Procedure 12(b)(6). For the reasons stated herein, the City's Motion to Dismiss is

granted in part and denied in part. Counts I and IV are dismissed with prejudice and Count III is

dismissed without prejudice. Defendants' Motion to Dismiss Counts II, V, VI, and VII are denied.

Counts VIII and IX stand.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Bradford Lyttle ("Lyttle") is a 79 year-old resident of Chicago, Illinois. Compl. ¶

3. Lyttle has a history of involvement in public rallies, marches, and other activities concerning civil

rights and political issues. *Id.* For the last four years, Lyttle has been involved in activities to

protest the United States' war in Iraq. *Id.* On March 20, 2003, the night after the United States'

invasion of Iraq, Lyttle was part of an anti-war demonstration in Chicago that led to the mass detention of approximately 800 citizens, and the arrest of 500 of those citizens by the Chicago Police Department. *Id.* at ¶ 4. None of these individuals were ultimately convicted, and the arrests are currently a subject of a class action lawsuit against the City now pending in the Northern District of Illinois. *Id.*

Prior to the second anniversary of the United States' invasion of Iraq, anti-war activists applied for a permit to conduct a march in Chicago, Illinois on Michigan Avenue. *Id.* at ¶ 5. The purpose of the march was to protest the war in Iraq and the alleged erosion of civil liberties in the United States. *Id.* The City rejected the permit application. *Id.* After the rejection, anti-war activists scheduled a press conference to take place at noon on March 19, 2005 on the sidewalk at the plaza at the Southwest corner of Oak Street and Michigan Avenue. *Id.* at ¶ 6. The denied permit application requested this corner as the start of the march. *Id.* According to Lyttle, press conferences are commonly held on sidewalks and in other public places in the City of Chicago. *Id.* at ¶ 7. A permit is not required to hold press conferences. *Id.*

Lyttle and other protestors scheduled the press conference because they believed that the City wanted to prevent any peaceful assembly to protest the Iraq war. *Id.* at ¶ 6. In addition, Lyttle claims that the City of Chicago attempted to deny him and others their First Amendment rights based on the content of their speech when the city rejected the permit for the protest. *Id.* On March 17, 2005, a Chicago police officer assigned to the City Hall Task Force informed Alderman Joe Moore, one of the scheduled speakers for the press conference, that he and others would be arrested if they attempted to hold the press conference. *Id.* at ¶ 8. Alderman Moore decided not to speak at the press conference. *Id.*

On March 19, 2005, Lyttle arrived at the Southwest corner of Oak Street and Michigan Avenue for the scheduled press conference. *Id.* at ¶ 9. There were approximately two hundred officers at the site of the press conference, clothed in either uniforms or riot gear with batons. *Id.* The number of officers outnumbered the attendees. *Id.* Several speakers attended the press conference and began addressing the attendees, including media representatives, at noon. *Id.* The speakers included Chris Geovanis, a member of the media and an anti-war activist, the Reverend Paul Jakes, a civil rights and police accountability activist, and Bill Massey, a Korean War veteran and member of the ANSWER Coalition. *Id.* at ¶ 10. During his speech, Massey stated that those holding the press conference had been threatened with arrest. *Id.*

John Killackey, then Deputy Chief of the City of Chicago Police Department, was also present at the Southwest corner of Oak and Michigan on March 19, 2005. *Id.* at ¶ 11. He read a statement over a megaphone at 11:55 a.m, 11:58 a.m, and 12:02 p.m. *Id.* On at least two occasions, Killackey testified under oath that the statements he made were not orders to disperse. *Id.* at ¶ 12. However, Killackey also testified that before 12:05 p.m., he ordered Lyttle arrested for committing disorderly conduct by knowingly failing to obey an order to disperse. *Id.* at ¶ 13. Officer Jones and Officer Shields detained and arrested Lyttle under Chicago Municipal Code, MCC8-4-010(d) ("Subsection (d)"). *Id.* at ¶ 16. Subsection (d) is the disorderly conduct ordinance in Chicago. *Id.* Lyttle was imprisoned for eight hours. *Id.* at ¶ 14. Lyttle claims that he was not given an order to disperse by Killackey or by any other police officer. *Id.* at ¶ 15.

On December 12, 2006, the City tried Lyttle on the disorderly conduct charge for which he was arrested before the Circuit Court of Cook County, Municipal Division. Compl. ¶ 17. The court issued a directed finding of not guilty. Compl. ¶ 17.

On March 13, 2007, Lyttle filed a Complaint against the City in the Northern District of Illinois pursuant to 42 U.S.C. § 1983. DK # 1. Lyttle alleged nine separate counts in his Complaint. Compl. ¶¶ 18-51.

Count I alleges that the City of Chicago's disorderly conduct ordinance is unconstitutional, and that Lyttle's arrest under the ordinance violated his civil rights under color of state law because the ordinance violates the First and Fourteenth Amendments of the United States Constitution, and Sections 2, 4, and 5 of the Illinois Constitution. Compl. ¶ 18-21. Lyttle requests the Court to declare Subsection (d) unconstitutional, and further requests preliminary and permanent injunctions prohibiting its enforcement. Compl. ¶ 22. Count II alleges First Amendment retaliation under 42 U.S.C. § 1983. Compl. ¶¶ 24-27. Count III alleges that Defendants John Killackey, Officer Jones, Officer Shields, and other unknown police department and City of Chicago officials were engaged in a conspiracy in violation of 42 U.S.C. § 1983. Compl. ¶¶ 30-34. Count IV alleges a violation of due process under 42 U.S.C. § 1983. Compl. ¶ 36. Count V alleges a claim for false detention, arrest, and imprisonment under 42 U.S.C. § 1983. Compl. ¶ 39. Count VI alleges a *Monell* claim under 42 U.S.C. § 1983. Compl. ¶ 42. Count VII alleges Lyttle's charge and arrest constituted the tort of malicious prosecution under the laws of the State of Illinois. Compl. ¶ 45. Count VIII alleges that the City is responsible for the alleged violations against Lyttle under the doctrine of respondeat superior. Count IX alleges that the City is strictly liable and required to indemnify its employees in any tort judgment for compensatory damages for which their employees acted within the scope of their employment activities. Compl. ¶ 50.

Lyttle requests the Court to award him attorneys' fees and costs, as well as any other such relief as the court deems appropriate, for each Count in the Complaint. Compl. ¶¶ 22, 28, 34, 37,

40, 43, 45, 48, 51. On June 1, 2007, the City moved to dismiss Lyttle's Complaint. DK # 27.


## STANDARD

Motions to Dismiss are construed in the light most favorable to the plaintiff. *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). The court must take as true "all well-pleaded factual allegations and making all possible inferences from those allegations in" the plaintiff's favor. *Id.* (citation omitted). In order to state a claim, a plaintiff must allege facts that plausibly suggest he is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 2007 WL 1461066, *8 (May 21, 2007). To allege plausible grounds for relief, the complaint must allow a "reasonable expectation" that discovery will reveal evidence of illegality. *Id.* at 1965.

## DISCUSSION

## I.      COUNTS I & IV ARE BARRED BY THE DOCTRINE OF RES JUDICATA

Lyttle claims that Subsection (d) is unconstitutional under the Fourth and Fourteenth Amendments. Compl. ¶¶ 18-22, 35-37. The City asserts that these claims are barred by the doctrine of *res judicata*, or claim preclusion, because Lyttle already litigated these claims in Illinois State Court. Def.'s Mem., 1-3. This Court finds that the doctrine of *res judicata* prevents Lyttle from bringing these claims in federal court, and also finds that collateral estoppel requires dismissal of Counts I & IV.

### A.      *Legal Standard*

State-court judgments have claim preclusive effect in § 1983 suits. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 84 (1984). In addition, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to "give state court judgments the same preclusive effect they would

have in state court." *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002) (citations omitted).

Illinois law states that:

> the doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and as to them constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action.

*Id. Res judicata* applies where (1) a court of competent jurisdiction renders a final judgment on the merits; (2) the causes of action are identical; (3) there is an identity of parties or their privies. *Id.* (citation omitted). The doctrine of *res judicata* applies to issues actually litigated in a previous action, "as well as those that could have been but were not litigated in the state court proceedings." *Id.* at 667 (citations omitted).

**B.     *The causes of action are identical and there is an identity of parties or their privies.***

The causes of action in both cases are identical. Lyttle was arrested for violating Subsection (d), and in both cases Lyttle claims that Subsection (d) is unconstitutional. Compl. ¶¶ 19, 36-37; Def.'s Mem., Ex. F. The parties in both cases are in privity with one another. Lyttle brought claims in state and federal court against the City of Chicago. Compl. P.1; Def.'s Mem., Ex. F. Under Illinois law "a government and its officers are in privity for purposes of *res judicata*," so the claims against the officers also fall under privity when assessing the two suits. *Licari*, 298 F.3d at 667. This leaves the question of whether the claims brought by Lyttle in state-court satisfy factor one.

**C.     *A court of competent jurisdiction rendered a final judgment on the merits.***

After Lyttle's arrest, he brought a motion to dismiss on the basis that Subsection (d) was unconstitutional. Def.'s Mem., Ex. F, 1. The Circuit Court of Cook County consolidated Lyttle's claims with that of Andy Thatcher, and denied the motion to dismiss, finding Subsection (d) constitutional. At the end of the trial, the state-court issued a directed verdict of not guilty for Lyttle.

*Id.* at Ex. F, 2. The City claims that the acquittal constitutes a final judgment on the merits. *Id.* at Ex. F, 2. Lyttle claims that his acquittal prevented him from appealing the denial of his Motion to Dismiss, thereby denying him the opportunity to receive a final judgment on the merits. Pl.'s Opp'n, 2. *Res judicata*, however, does not require that a claim be fully litigated and decided for it to apply. "A plaintiff is afforded a full and fair opportunity to litigate his claims so long as the state court proceedings complied with the minimum procedural requirements of the Due Process Clause." *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007).

Lyttle did receive a final judgment on the merits when he was acquitted. Def.'s Mem., 2. Lyttle also was given a "full and fair opportunity to litigate" his claim that Subsection (d) was unconstitutional when he filed his Motion to Dismiss. *Id.* at Ex. F. The state-court judge issued a written opinion and order regarding Lyttle and Thayer's consolidated Motion to Dismiss. *Id.* at Ex. F. The judge directly considered whether Subsection (d) was unconstitutional or "facially vague and over broad." *Id.* at Ex. F, 3-4. In making its decision, the judge reviewed Illinois Supreme Court cases involving Subsection (d) and challenges to its constitutionality. *Id.* at Ex. F, 4-6. The Illinois Supreme Court consistently held that Subsection (d) was neither unconstitutional, vague, nor over broad. *Id.* at Ex. F, 4-6 (*citing City of Chicago v. Fort*, 46 Ill. 2d 12 (1970); *People v. Raby*, 40 Ill. 2d 392 (1968); *City of Chicago v. Greene*, 47 Ill. 2d 30 (1970)). Therefore, Lyttle's inability to appeal the denial of his Motion to Dismiss does not prevent the doctrine of *res judicata* from applying to this case, because he was "afforded a full and fair opportunity to litigate his claims." *Hicks*, 479 F.3d at 471.

D.    ***The Doctrine of Collateral Estoppel Also Prevents Lyttle from Bringing Counts I & IV***

Lyttle claims that the City is really attempting to assert collateral estoppel or issue

preclusion. Pl.'s Opp'n, 1. Even if this court were to apply collateral estoppel to Lyttle's claims, however, Counts I & IV are subject to dismissal. State-court judgments have an issue preclusive effect in § 1983 suits. *Migra*, 465 U.S. at 84 (discussing *Allen v. McCurry*, 449 U.S. 90 (1980)). Collateral estoppel:

> precludes relitigation of issues in a subsequent proceeding when: (1) the party against whom the doctrine was asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical.

*Thompson v. Mueller*, 976 F. Supp. 762, 764 (N.D. Ill. 1997).

Collateral estoppel applies in this case. The City is asserting the doctrine of collateral estoppel against Lyttle who was a party in the earlier proceeding. This satisfies factor one. If the state-court judge found Subsection (d) to be unconstitutional, it is likely that he would have dismissed the case against Lyttle. Therefore, the state-court had to make a decision regarding Lyttle's Motion to Dismiss based on the constitutionality of Subsection (d) before proceeding with the trial, satisfying factor three. The issue in Counts I & IV of this case, the constitutionality of Subsection (d), is identical to the issue in Lyttle's Motion to Dismiss during the previous state-court proceeding. Thus, factor four is also satisfied. All that is left for this Court to determine, is whether the constitutionality of Subsection (d) was actually litigated and decided on the merits in accordance with factor two.

In *Thompson v. Mueller*, a court in the Northern District of Illinois found that "a line of cases – which includes federal courts in this district interpreting Illinois law" hold that collateral estoppel "is inapplicable if there was no possibility of appellate review." *Id.* at 765-66. The court, however, disagreed with this reasoning because it was "based primarily on Illinois Supreme Court decisions involving criminal cases" and the case in *Thompson* was a civil case. *Id.* at 766. The *Thompson*

court went on to conclude that "the determination as to the applicability of the collateral estoppel doctrine 'depends upon a case by case analysis.'" *Id.* (citations omitted). The *Thompson* court stated that it is "critical to keep in mind the logic supporting the [collateral estoppel] doctrine: 'that the result achieved in the initial litigation was substantially correct.'" *Id.* (citation omitted). The *Thompson* court allowed the collateral estoppel doctrine to apply to the facts of the case, even though the defendant was unable to appeal a state judge's ruling regarding a probable cause determination because he was acquitted of the charges. *Id.* at 764, 766.

The court's finding in *Thompson v. Mueller*, however, was criticized by another court in the Northern District of Illinois. *Toro v. P.O. R. Gainer #19418*, 370 F. Supp. 2d 736, 739 (N.D. Ill. 2005). The *Toro* court stated that the *Thompson* court "failed to give proper weight to the state courts' view that acquittal is a 'peculiar circumstance' that militates against collateral estoppel." *Toro*, 370 F. Supp. 2d at 740 (citation omitted). Despite its criticism of the *Thompson* court's decision regarding the applicability of collateral estoppel when the defendant is without the ability to appeal the decision due to acquittal, the *Toro* court distinguished its case from that of the *Thompson* court. *Id.* The *Thompson* court's decision regarding the probable cause issue was litigated thoroughly, and evidence was presented in a two-day pretrial hearing. *Id.* In *Toro*, the issue was whether the defendant had the physical ability to run, and the expert testifying that the defendant could not run did not testify during the pretrial hearing. *Id.* at 737-38, 741. "[T]he evidence presented at plaintiff's trial was different than that at the pretrial hearing." *Id.* 740. This lack of thorough litigation before making a ruling, distinguishes *Toro* from *Thompson.*

The instant case is more analogous to *Thompson* than *Toro.* The state-court judge issued a written opinion where he acknowledged considering "all the pleadings filed and arguments made

by the City and the defendants [Lyttle and Thayer] through their attorneys." Def.'s Mem., Ex. F, 1. Not only did the state-court judge allow the parties to fully litigate the issue, the state-court judge also set out why the Subsection (d) was constitutional. In doing so, the state-court judge referred to several Illinois Supreme Court cases involving Subsection (d), all of which found the ordinance to be constitutional. Furthermore, "the availability of appellate review is not always an essential predicate of collateral estoppel." *Thompson*, 976 F. Supp. at 766 (*citing Standefer v. U.S.*, 447 U.S. 10, 23 n. 18 (1980)). Thus, the doctrine of collateral estoppel also precludes Lyttle from relitigating Counts I & IV. Therefore, Counts I and IV are dismissed with prejudice on the basis of *res judicata* and collateral estoppel.

## II.     COUNTS II AND VI BROUGHT PURSUANT TO 42 U.S.C. § 1983

In Count II, Lyttle alleges that individuals representing the City, with final policymaking authority, or who had been delegated with the same, retaliated against Lyttle by arresting him without probable cause solely because Lyttle engaged in First Amendment activity. Compl. ¶ 26. Lyttle's claim was brought pursuant to 42 U.S.C. § 1983. *Id.* at 10-11. Count VI is also brought pursuant to 42 U.S.C. § 1983 and alleges that the City of Chicago and the Chicago Police Department "as a matter of both policy and practice" directly encourage, and are thereby the moving force behind the officer's misconduct by "directly ordering, supervising, and condoning the suppression of First Amendment activity within the City of Chicago when that activity concerns gathering in public to protest the war in Iraq and speaking out against the war in Iraq." Compl. ¶ 42. Lyttle further alleges that "as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse its citizens in a manner similar to that alleged by Plaintiff, and have done so since the mass arrest of

800 plus citizens at the very first protest against the Iraq war in Chicago." Compl. ¶ 42. Defendant move to dismiss Counts II and VI on the basis that Lyttle failed to plead facts supportive of a claim against a municipality.

### A. Legal Standard for Suing a Municipality or Local Government

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978). A government entity is responsible under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or act may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* In order for the City to be liable under § 1983, Lyttle must show that the City had either:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Id.* Further, Lyttle must show that the municipality's action was deliberate, and he must show a direct causal link between the action and the deprivation of his rights. *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).

### B. Count II: Lyttle's Retaliation claim

To maintain a First Amendment retaliation claim, a plaintiff must establish (1) that she engaged in a constitutionally protected activity and (2) that the protected conduct was a "substantial or motivating factor" in defendants' challenged action. *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004), *citing Sullivan v. Ramirez*, 360 F.3d 692, 697 (7th Cir. 2004); *Vukadinovich v. Bd. of Sch.*

*Trs.*, 278 F.3d 693, 699 (7th Cir. 2002); *Kokkinis v. Ivkovich*, 185 F.3d 840, 843 (7th Cir. 1999). Lyttle has pleaded facts supportive of his assertion that he was engaging in constitutionally protected activity, namely, protesting the Iraq war, when he was arrested. It appears from the pleadings that Lyttle's retaliation claim seeks to hold the City liable on the basis that Defendants Killackey, Jones, Shields "and other as yet unknown high-ranking police department and City of Chicago officials, all of whom either had final policymaking authority or had been delegated with the same" retaliated against Lyttle by arresting him without probable cause for engaging in protected First Amendment activity. Compl. ¶ 26. The issue before the Court is whether Lyttle pleaded allegations supportive of holding the City liable for the actions of the Chicago Police Officers.

First, Lyttle alleges that the police officers had final policymaking authority or had been delegated with same when they arrested in him without probable cause in retaliation for speaking out against the Iraq war. The Seventh Circuit has held that superior officers and supervisors of police officers "do not qualify as policymakers for the City." *Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001) (*citing Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992)). Moreover, the City is governed by a consent decree which prohibits discrimination "against any person on the basis of their conduct protected by the First Amendment . . . ." Def.'s Mem., Ex. G, 3. In addition to the City policy established by the consent decree, the City Council has passed two resolutions "expressing disapproval of the [Iraq] war and urging the United States government to withdraw from Iraq." *Id.* at Ex. H-I. These resolutions were passed on January 16, 2003 and September 14, 2005. *Id.* Thus, the City has publicly criticized the war in Iraq in direct conflict with Lyttle's claims that the City has a policy of suppressing First Amendment activity when it involves protesting or speaking out against the war in Iraq. Assuming Lyttle's facts as true, if the officers retaliated against

Lyttle on the basis that he was speaking out against the war, they were acting contrary to the City's express policy.  According to *Praprotnik*,

> "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."

*St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  Accordingly, "liability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's action must implement rather than frustrate the government's policy."  *Auriemma v. Rice*, 957 F.2d 397, 400 (7th Cir. 1992). Lyttle has not alleged that the City ratified the police officer's conduct after the police officers allegedly acted contrary to the City's express policy.

Second, Lyttle claims that the policymakers delegated their authority to the police officers. Delegation under *Monell* liability is delegation of final policymaking authority, not the authority to make final, even unreviewed decisions.  *See Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001).  "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *St. Louis v. Praprotnik*, 485 U.S. 112 118 (1988).  The identification of policymaking officials is a question of state law.  Here, Lyttle pleads in a conclusory fashion that the officers were delegated final policymaking authority.  Lyttle does not identify the alleged policymaking officials who delegated responsibility to the officers nor does Lyttle plead  facts supportive of the assertion that the unidentified officials that delegated said authority had final policymaking authority to delegate in

the first instance. Accordingly, Lyttle fails to plead facts that would plausibly entitle him to relief on the basis that the City delegated final policymaking authority to police officers.

That leaves the Court with the issue of whether Lyttle pleaded facts supportive of his assertion that unidentified City officials acting pursuant to direct or delegated policymaking authority retaliated against him for speaking out against the Iraq war. Lyttle pleads that two days before the press conference, one of the scheduled speakers, Alderman Joe Moore ("Moore"), was informed by a Chicago police officer assigned to the City Hall Task Force that he and others would be arrested if they attempted to hold the press conference. Compl. ¶ 8. This occurred after the City rejected the protesters' permit application. Compl. ¶ 5. Two days later, Moore decided not to speak and Lyttle and others were arrested by Chicago Police Officers. Taking Lyttle's allegations as true, Lyttle was arrested even though he was not ordered to disperse. Additionally, Lyttle pleaded that speakers at the press conference announced that they were threatened with arrest for holding the press conference. Compl. ¶ 10. Based upon the temporal proximity and the connection between the permit rejection, the officer's statement to Moore, the officer's connection to City Hall, the lack of an order to disperse, and the subsequent arrest, this Court finds that Lyttle has adequately pleaded facts that plausibly suggest City official involvement in Lyttle's subsequent arrest. Additionally, Lyttle's facts sufficiently plead that the protected conduct, namely Lyttle's protest of the Iraq war, was a "substantial or motivating factor" in defendants' challenged action in light of Lyttle's allegation regarding the warning to Moore and the lack of an order to disperse prior to the arrest. In other words, Lyttle has pleaded facts that show a "reasonable expectation" that discovery will reveal evidence of illegality. Accordingly, Defendants' Motion to Dismiss Count II, Lyttle's First Amendment Retaliation claim under § 1983, is denied.

### C. Count VI: Lyttle's *Monell* claim

Count VI is  brought pursuant to 42 U.S.C. § 1983 and alleges that the City of Chicago and the Chicago Police Department "as a matter of both policy and practice" directly encourage, and are thereby the moving force behind the officer's misconduct by "directly ordering, supervising, and condoning the suppression of First Amendment activity within the City of Chicago when that activity concerns gathering in public to protest the war in Iraq and speaking out against the war in Iraq." Compl. ¶ 42. Lyttle further alleges that "as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse its citizens in a manner similar to that alleged by Plaintiff, and have done so since the mass arrest of 800 plus citizens at the very first protest against the Iraq war in Chicago." Compl. ¶ 42.

#### 1. "As a matter of policy"

Under *Monell*, Lyttle may bring a claim against the City under § 1983 if the City had an express policy that, when enforced, causes a constitutional deprivation. Lyttle claims that the City has "a policy" which intentionally prohibits individuals from gathering in public to protest the war in Iraq, but does not identify an express policy as part of his *Monell* claim. Compl. § 42. Additionally, Lyttle does not point to an express policy in his brief opposing Defendants' motion.

#### 2. "As a matter of practice"

Lyttle also argues that the City supervised and condoned the suppression of First Amendment activity within the City of Chicago when activity concerned gather in public to protest the Iraq war. Lyttle further alleges that the City had a widespread practice so prevalent as to comprise municipal policy as evidenced by the first and second mass arrests in 2003 and 2005. In *Cornfield v. Consolidated High School District No. 230*, 991 F.2d 1316,  (7th Cir. 1993), the court stated:

an allegation of a pattern or a series of incidents of unconstitutional conduct is required to withstand a motion to dismiss for a failure to make policy. In other words, enduring practices of officials or their employees may create liability. Cornfield, however, does not allege that there is a widespread practice of nonconsensual and unconstitutional searches of students in District 230 that would support a conclusion of municipal liability. Rather, his position is that District 230 should be held liable on account of this and one alleged previous strip search at Carl Sandburg High School as well as a subsequent endorsement by District 230 school board president of strip searches of students conducted with parental consent.

*Id.* at 1326 (internal citations omitted) (emphasis added). The Seventh Circuit found that two separate incidents of unconstitutional strip searches could not be used to establish a widespread practice to withstand a motion to dismiss for failure to make policy even though the school board president endorsed the conduct at issue.

Lyttle has alleged at least two instances that he believes demonstrate the City's widespread practice of chilling protestors of the Iraq war, namely, the first and second mass arrests. Lyttle alleges that he was involved in an anti-war demonstration on March 20, 2003 which ultimately led to his arrest, as well as the arrest of more than 500 citizens. Compl. ¶ 4. The second incident discussed by Lyttle is the press conference which occurred on March 19, 2005, where Lyttle was ultimately arrested for allegedly violating Subsection (d). Compl. ¶¶ 14, 16. Lyttle also states that the policeman assigned to City Hall warned that he and others would be arrested if they held the press conference on March 19, 2005. Lyttle later pleaded that the City "directly encourages and is thereby the moving force behind the very type of misconduct at issue here by directly ordered, supervising and condoning the suppression of First Amendment activity with it the City of Chicago when it concerns public protests of the Iraq war. The Seventh Circuit has held that an allegation of a pattern or a series of incidents of unconstitutional conduct is required to withstand a motion to dismiss for a failure to make policy. *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981);

*accord Jones*, 787 F.2d at 204 (requiring "systemic" faulty inaction).  Lyttle has sufficiently pleaded a pattern or series of incidents of allegedly unconstitutional conduct.  Therefore, Lyttle pleaded sufficient facts that plausibly entitle him to relief and suggest that discovery could reveal evidence of illegality.   Accordingly, Defendants' Motion to Dismiss Count VI is denied.

## III.   LYTTLE FAILS TO STATE A CONSPIRACY CLAIM

In Count III, Lyttle alleges that Defendants John Killackey, Officer Jones, Officer Shields, other unknown police department and City of Chicago officials, all of whom had or had been delegated final policymaking authority, acted in concert with other known and unknown co-conspirators, and reached an understanding to deprive Lyttle of his constitutional rights.  Compl. ¶¶ 30-31.  Lyttle does not specifically allege that the City of Chicago was a part of the conspiracy.  Lyttle does state that in furtherance of the conspiracy, the Defendants mentioned above, committed overt acts and were otherwise willful participants in joint activity with state actors acting under color of law.  Compl. ¶ 32.

### A.     *Legal Standard for a Conspiracy Claim*

The Seventh Circuit provides clear guidance on the appropriate standards for pleading a conspiracy claim in a § 1983 action.  When pleading a conspiracy claim, it is enough to merely "indicate the parties, the general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002).  While there does need to be an indication of the nature the alleged conspiratorial agreement, the plaintiff is not required to plead the overt act. *Id.* at 1007-08.  Since the Seventh Circuit's decision in *Walker*, however, the Supreme Court decided *Bell Atlantic Corp., v. Twombly*, 127 S.Ct. 1955 (2007).  In *Twombly*, the Supreme Court addressed what a plaintiff must plead in order to state a claim under

§ 1 of the Sherman Act. *Id.* at 1964. The court found that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement of relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citation omitted). The Supreme Court goes on to describe the pleading of facts under the Federal Rules generally, stating that:

> Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Id.* at n. 3. The Supreme Court's reasoning in *Twombly* applies to all pleadings which fall under Rule 8(a)(2).

### B.     *Lyttle Fails to Make a Showing*

Lyttle fails to explicitly plead that the City was involved in the conspiracy, which would seem to require the conspiracy claim against the City to be dismissed on the grounds that he did not adequately provide fair notice to the City that it was charged with conspiracy. Compl. ¶¶ 29-34; *Walker*, 288 F.3d at 1007. But assuming that the City is a part of the alleged conspiracy, Lyttle must do more than make a "blanket assertion" that a conspiracy has occurred. Lyttle states that the Defendants working in concert "reached an understanding to deprive Plaintiff of his constitutional rights." Compl. ¶ 30. This statement is a blanket assertion. Lyttle provides no grounds upon which his claim rests. Lyttle fails to allege that the City and Officers' conspired and reached an understanding to specifically "deprive [Lyttle] of his constitutional rights" by arresting him without probable cause. Lyttle must provide more than a blanket assertion, and he fails to do so in his Complaint.

While this Court acknowledges Lyttle's claim that the conspiratorial agreement may be

inferred from circumstantial evidence, based on *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir. 1999), the Court does not find that Lyttle has even satisfied the standard set out in *Hernandez.* Lyttle fails to plead that the City is involved in the alleged conspiracy, and fails to allege any evidence, circumstantial or direct, that would lead the Court to conclude that the policy adopted by the City eventually led to a conspiracy to arrest Lyttle under Subsection (d). While this Court may be able to "infer" from Lyttle's complaint that the City had an alleged policy to prevent individuals from exercising their First Amendment rights to protest the war in Iraq, the Court would have to make an additional jump to find that the City conspired with the Officers' to arrest Lyttle. Lyttle provides no facts or allegations on which the Court can find, or "infer," that the City and Officers' engaged in a conspiracy of this nature. Therefore, Count III of Lyttle's complaint is dismissed without prejudice.

### C.      *The City's Claims Regarding the Intra-corporate Conspiracy Doctrine Fail*

Although this Court finds that Lyttle's conspiracy claims are not sufficiently alleged, the Court also finds the City's intra-corporate conspiracy doctrine claim to be unpersuasive. The City claims that Lyttle's conspiracy claim is barred by the intra-corporate conspiracy doctrine. The intra-corporate conspiracy doctrine precludes a conspiracy from existing solely between members of the same entity when they act within the scope of their authority. Def.'s Mem., 13. While the Seventh Circuit has not yet addressed whether the doctrine applies to § 1983 cases, the majority of district courts within the Seventh Circuit have found the doctrine inapplicable to § 1983 cases involving police. *Schmittling v. City of Belleville*, 2006 U.S. Dist. LEXIS 28594, *12 (S.D. Ill. May 10, 2006). Furthermore, if the doctrine did apply, the conduct alleged by Lyttle, that the Officers and the City have a policy of preventing protest of the Iraq war in violation of Lyttle's First Amendment rights,

is outside the scope of the Officers' employment. Conduct outside the Officers' employment would fall under the exception to the intra-corporate conspiracy doctrine discussed in *Hartman v. Board of Trustees of Community College Dist. No. 508*, 4 F.3d 465, 469-70 (7th Cir. 1993).

## IV. LYTTLE'S CLAIMS FOR FALSE DETENTION, ARREST, AND IMPRISONMENT

In Count V, Lyttle claims that the Officers falsely detained, arrested, and imprisoned Lyttle without reasonable suspicion or probable cause in violation of his Fourth Amendment rights to be free from unreasonable search and seizure under the United States Constitution, and thus violated U.S.C. § 1983. Compl. ¶¶ 38-40. Because this Court cannot determine with certainty from the pleadings that the Officers had probable cause for arresting Lyttle, Defendants' Motion to dismiss Count V is denied.

### A. Legal Standard for Determining False Detention, Arrest, and Imprisonment Claims Under § 1983

"[T]he existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution," regardless of the Officers' motives toward the plaintiff. *Schertz v. Waupaca County*, 875 F.2d 578, 582 (1989) (citation omitted). "An exception to this rule exists, if the finding of probable cause is based on the defendant's intentional misrepresentation or concealment of material facts, the plaintiff may be able to proceed on a Fourth Amendment claim challenging the reasonableness of an arrest." *Id.*

### B. Lyttle pleaded sufficient facts to show that the Officers may have arrested whim without probable cause

Lyttle's claims regarding false detention, arrest, and imprisonment must fail if the Officers had probable cause to arrest him. "'[P]olice officers have probable cause to make an arrest where the fact and circumstances within their knowledge and of which they have reasonably trustworthy

information are sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *U.S. v. Gilbert*, 45 F.3d 1163, 1166 (7th Cir. 1995) (citations omitted).

Lyttle's Complaint indicates that Defendant Killackey read statements on a megaphone at 11:55 a.m., 11:58 a.m., and 12:02 p.m. Compl. ¶ 11. Officers Jones and Shields arrested Lyttle after Killackey read these statements. Compl. ¶¶ 11-14. Lyttle also pleaded facts suggesting that Officer Killackey has contradicted himself under oath regarding whether an order to disperse was given to the protesters. More important, Lyttle alleged that no order to disperse was given prior to his arrest. At this stage of the case, this Court is required to assume that Lyttle's facts are true. Accordingly, assuming that no order to disperse was given prior to Lyttle's arrest, Lyttle may be able to discover evidence that the Officers acted without probable cause. Based on these allegations, this Court cannot conclusively find on the pleadings that the Officers believed that Lyttle had committed or was committing an offense. The exception discussed in *Schertz* does not apply to Lyttle's claims because he did not allege that probable cause for his arrest was based on the defendant's intentional misrepresentation or concealment of material facts. Accordingly, Defendants' Motion to Dismiss Count V is denied.

## V.    LYTTLE'S MALICIOUS PROSECUTION CLAIM

In Count VII, Lyttle claims that the City maliciously prosecuted him in violation of Illinois State law. Compl. ¶ 45. He alleges that Defendants created a false store and falsely charged him with one count of disorderly conduct. Lyttle must properly plead malicious prosecution under the standards set out in Illinois state law.

### A.    *Legal Standard for Pleading a Malicious Prosecution Claim*

Lyttle must first allege that he "was subjected to judicial proceedings for which there was

no probable cause and that the defendants instituted those proceedings maliciously and that the proceedings were terminated in the plaintiff's favor." *McDade v. Stacker*, 105 Fed. Appx. 471, 475 (2004). Lyttle must also show that the malicious prosecution caused him injury. *Id.* (citation omitted). Lyttle must allege that the Officers arrested him without probable cause, but a lack of probable cause is not sufficient to sustain a claim of malicious prosecution. *Id.* Lyttle must also show that "the officers committed some improper act after they arrested him without probable cause, for example, that they pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence." *Id.* (citation omitted).

### B.     *Lyttle's Claim*

Lyttle alleged that he was subjected to judicial proceedings for which there was no probable cause and that the defendants instituted those proceedings maliciously. Lyttle further pleaded that he was acquitted of the charges and that the alleged malicious prosecution caused him injury. Namely, Lyttle lost his liberty for hours and incurred legal expenses and suffered emotional distress. Lyttle alleges that the officers and City officials "created a false story" which satisfies the remainder of the elements Lyttle must plead to survive a motion to dismiss. Accordingly, Lyttle has properly alleged the state law claim of malicious prosecution and Defendants' Motion to Dismiss Count VII is denied. Defendants do not address Counts VIII and IX of Lyttle's Complaint, and therefore, those Counts stand.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part. Counts I and IV are dismissed with prejudice and Count III is dismissed without prejudice.

Defendants' Motion to Dismiss Counts II, V, VI, and VII are denied. Counts VIII and IX stand.

So ordered.

_Virginia M. Kendall_

Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: