IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRADFORD LYTTLE, ) <br> ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> JOHN KILLACKEY, OFFICER (F.N.U.) ) <br> JONES, OFFICER E. SHIELDS, UNKNOWN ) <br> POLICE OFFICERS and EMPLOYEES of the ) <br> City of Chicago, and the CITY OF CHICAGO ) <br> ) <br> Defendants. ) <br> ) | Case No. 07 C 1406 <br><br> Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Bradford Lyttle ("Lyttle"), moves to reconsider this Court's November 20, 2007 Order dismissing Counts I and IV of Lyttle's Complaint on the basis of *res judicata* and collateral estoppel. Lyttle filed this action pursuant to 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the Constitution against John Killackey ("Killackey"), Officer (F.N.U.) Jones ("Jones"), Officer E. Shields ("Shields"), Unknown Police Officers ("Officers"), and the City of Chicago ("the City") (collectively "Defendants"). For the reasons stated herein, Lyttle's Motion to Reconsider is granted, but Counts I and IV are dismissed on other grounds– namely, as a matter of law because the City's disorderly conduct ordinance is constitutional as written.[1]

I.  Background

On March 20, 2003, the night after the United States' invasion of Iraq, Lyttle was part of an

---

[1] Although briefed by the parties, this Court did not reach the constitutionality issue in its original opinion because it dismissed Counts I and IV on the basis of *res judicata* and collateral estoppel.

1

anti-war demonstration in Chicago that led to the mass detention of approximately 800 citizens, and the arrest of 500 of those citizens by the Chicago Police Department. Officers Jones and Shields detained and arrested Lyttle under Chicago Municipal Code, MCC8-4-010(d) ("Subsection (d)") which is the disorderly conduct ordinance in Chicago. Lyttle was imprisoned for eight hours and the State prosecuted him for violating the ordinance. During the criminal trial, Lyttle moved to dismiss the charges on the basis that Subsection (d) was unconstitutional, facially vague, and over broad. The judge denied Lyttle's motion. In making its decision, the judge reviewed Illinois Supreme Court cases involving Subsection (d) and challenges to its constitutionality finding that the Illinois Supreme Court had consistently held that Subsection (d) was neither unconstitutional, vague, nor over broad. *Id.* at Ex. F, 4-6 (*citing City of Chicago v. Fort*, 46 Ill. 2d 12 (Ill. 1970); *People v. Raby*, 40 Ill. 2d 392 (Ill. 1968); *City of Chicago v. Greene*, 47 Ill. 2d 30 (Ill. 1970)). On December 12, 2006, the City prosecuted Lyttle on the disorderly conduct charge for which he was arrested in the Circuit Court of Cook County. Cplt. ¶ 17. The court issued a directed finding of not guilty. Cplt. ¶ 17.

Following his acquittal, Lyttle filed this action against Defendants. Lyttle's Complaint alleged that the City's disorderly conduct ordinance is unconstitutional and that his arrest violated his civil rights under color of state law because the ordinance violates the First and Fourteenth Amendments of the United States Constitution, and Sections 2, 4, and 5 of the Illinois Constitution. Cplt. ¶ 18-21. In his Complaint, Lyttle seeks preliminary and permanent injunctions against the City barring the City from enforcing Subsection (d) because the ordinance is unconstitutional. Cplt. ¶ 22. Lyttle also alleged that the City violated his due process rights under 42 U.S.C. § 1983 and brought State law claims against the City for malicious prosecution, respondent superior, and

indemnification.

The City moved to dismiss Lyttle's Complaint arguing that Counts I and IV should be dismissed as a matter of law pursuant to the doctrine of *res judicata* and collateral estoppel, and alternatively, because Subsection (d) is constitutional as written. On November 20, 2007, this Court dismissed Counts I and IV on the basis that Lyttle's facial attacks to the City's ordinance were barred by the doctrines of *res judicata* and collateral estoppel. Lyttle moved to reconsider the Court's ruling.[2]

In order for Lyttle to prevail on such a motion, he must allege the discovery of new evidence, an intervening change in the controlling law, or a manifest error of law. *See LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). Lyttle further argues that the circumstances of his case require this Court to apply an exception to the bar of collateral estoppel because "peculiar circumstances" exist– an argument he failed to develop in his filings. Namely, Lyttle argues that he did not have the opportunity to appeal the State Court's decision denying his motion to dismiss because he was later acquitted of the criminal charges. Although Lyttle failed to raise the "peculiar circumstance" exception in his Response brief to Defendants' Motion to Dismiss, Lyttle cited case law supporting his assertion, and therefore, this Court will consider this argument to determine whether the Court's ruling was clearly erroneous and would work an manifest injustice. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988); *quoting Arizona v. California*, 460 U.S. 605, 618 (1983) ("A court has the power to revisit prior decisions of its own . . . in any circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" Lyttle moved to reconsider the Court's decision under both the collateral

---

[2] In the November 20, 2007 Order, this Court dismissed Count III without prejudice.

estoppel and the *res judicata* doctrines.

II.     Collateral Estoppel

Under Illinois law for the doctrine of collateral estoppel a defendant must show that: "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom the estoppel is asserted was a party or in privity with a party to the prior adjudication." *Bajwa v. Metropolitan Life Ins. Co.*, 804 N.E.2d 519, 532 (Ill. 2004). Since the doctrine of collateral estoppel is an equitable doctrine, "collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped." *Id*. Here, the parties agree that the issues and the parties are identical and that the State Court judge issued a written opinion following a fully briefed motion to dismiss Lyttle's facial attacks to the City's disorderly conduct ordinance. The parties also agree that the State Judge's order was interlocutory, and thus, unappealable, and that the defendant was later acquitted precluding a post-conviction appeal.

Pre-trial rulings in criminal trials can have a preclusive effect on later cases. *See e.g. People v. Owens*, 464 N.E.2d 252, 255 (Ill. 1984) (estopping inmate from relitigating suppressing his confession because the matter was decided in a motion to suppress hearing before the trial court); *People v. Miller*, 464 N.E.2d 1197, 1199 (Ill. App. Ct. 1984)(barring defendant from relitigating a pretrial motion to suppress unless there is additional evidence or peculiar circumstances warranting reconsideration not merely discovering a new argument). However, Illinois Courts have identified a limited exception to the application of collateral estoppel in "peculiar circumstances," specifically, when a criminal defendant did not have an opportunity to obtain a review of the correctness of a

4

ruling made in his earlier trial because of his acquittal. *See People v. Mordican*, 356 N.E.2d 71, 73-74 (Ill. 1976); *see also People v. Hopkins*, 284 N.E.2d 283, 285 (Ill. 1972) (peculiar circumstances include a "variety of reasons [the criminal defendant] might not wish to appeal" or additional evidence). Lyttle's Motion to Dismiss was denied in an interlocutory order issued by the State Court trial judge, and as such, Lyttle could not appeal the pre-trial order. *See e.g. People v. Farmer*, 650 N.E.2d 1006, 1009 (Ill. 1995) (Under Illinois law, a criminal defendant cannot appeal prior to trial the denial of a pre-trial motion). Nor could Lyttle appeal the decision post-acquittal. *See e.g. People v. Cunningham*, 766 N.E.2d 323 (2d Dist. 2002) (A criminal defendant who is acquitted cannot appeal pre-trial rulings). Accordingly, Lyttle's circumstances constitute a "peculiar circumstance" permitting him to raise the issue and not be collaterally estopped under exception to the collateral estoppel doctrine under Illinois law.[3]

Defendants argue that the "peculiar circumstances" exception to the collateral estoppel doctrine is limited to criminal prosecutions citing to the *Hopkins* and *Mordican* cases– both criminal cases– and to Justice Burger's dissent in *Ashe v. Swenson.* 397 U.S. 436 (1970) in which he distinguished the policy rationales for applying collateral estoppel in civil cases as being of less importance in criminal trials. *Id*. at 464. Yet, language in the *Sutherland* opinion suggests against

---

[3] In its Memorandum and Opinion Order dated November 20, 2007, this Court likened Lyttle's case to *Thompson v. Mueller*. *See* 976 F.Supp. 762 (N.D. Ill. 1997). Upon further review, *Thompson* is distinguishable because the Court applied the collateral estoppel doctrine because under the particular facts of the case it was "not unfair nor would it lead to an injustice since appeals of credibility determinations go nowhere." *Id*. at 766. The Court's decision in Lyttle's criminal trial did not rest upon a credibility determination, but rather, upon its interpretation of Illinois law. Accordingly, Lyttle's circumstances are more akin to those presented in *Toro v. Gainer,* 370 F. Supp. 2d 736, 740 (acquittal is a peculiar circumstance that militates against collateral estoppel) and the reasoning set forth in the recent Illinois Supreme Court decision in *People v. Sutherland*. 370 F. Supp. 2d 736 (N.D. Ill. 2005); 223 Ill.2d 187, 207 (Il. 2006) (Special circumstances have been found where a defendant is acquitted and thereby denied the opportunity to appeal the trial court's ruling).

5

limiting the exception to subsequent criminal prosecutions. *See People v. Sutherland*, 223 Ill.2d 187, 207 (Ill. 2006) (emphasis added) ("[W]here a defendant is acquitted and thereby denied the opportunity to appeal the trial court's ruling" that party will not be barred from relitigating the issue "in a *subsequent proceeding*.") Because Lyttle was not allowed to appeal the State Court Judge's ruling on his motion to dismiss in the criminal proceeding after he was acquitted, Lyttle's claim in this subsequent proceeding is not barred by the doctrine of collateral estoppel. Applying the doctrine of collateral estoppel to Counts I and IV would result in a manifest injustice, and therefore, Lyttle's Motion to Reconsider this Court's ruling dismissing Counts I and IV on the basis of collateral estoppel is granted.

III. Res judicata

Lyttle also moves to reconsider this Court's ruling dismissing Counts I and IV on the basis of *res judicata*. Federal courts must give a state-court judgment "full faith and credit," and give state-court judgments the *res judicata* effect an Illinois court would give it. *Torres v. Rebarchak*, 814 F.2d 1219, 1222 (7th Cir. 1987) (applying Illinois law); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 560 (7th Cir. 1999) ("Because an Illinois state court rendered the . . . order at issue, we must apply Illinois law to determine whether *res judicata* bars [the] claims."). Under Illinois law, the essential elements of the *res judicata* doctrine are (1) identity of parties or their privies in the two suits; (2) identity of causes of action in the prior and current suit; and (3) a final judgment on the merits in the prior suit. *Rockford Mut. Ins. Co. v. Amerisure Ins. Co. and Michigan Mut. Ins. Co.*, 925 F.2d 193, 195 (7th Cir. 1991); *Torres*, 814 F.2d at 1222. The parties agree that the first two prongs are met, but disagree as to whether Lyttle received a final judgment on the merits. Specifically, Lyttle contends that the "peculiar circumstance" exception recognized by the Illinois

Courts in *Mordican*, *Sutherland*, and *Hopkins* should also be applied to the doctrine of *res judicata*. Put another way, Lyttle argues that he did not receive a final judgment on the merits because he was prevented from appealing the State Court's interlocutory order denying his motion to dismiss.

The Illinois Supreme Court has yet to address whether the "peculiar circumstance" exception applies to the doctrine of *res judicata.* Since the Illinois Supreme Court has not directly addressed this issue, decisions of the Illinois Appellate Courts control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Allen v. Transamerica Insurance Co.*, 128 F.3d 462, 466 (7th Cir. 1997). At least one Appellate Court has limited the applications of *both* doctrines in "exceptional circumstances." *People v. Savory*, 435 N.E.2d 226, 229-30 (Ill. App. Ct. 1982) (Defendant was not barred from relitigating his motion to suppress during the second trial by the doctrines of res judicata and collateral estoppel because the statements that the defendant sought to suppress could not have contributed to his first conviction and would have been considered moot on appeal.); *see also People v. Smith,* 390 N.E.2d 1356 (Ill. 1979) (defendant was not precluded from relitigating issues on remand concerning the validity of a search warrant where issues were presented to, but not decided by, the appellate court).

Moreover, Illinois Courts refrain from applying *res judicata* and collateral estoppel "if the plaintiff did not have a full and fair opportunity to litigate his claim in state court." *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007) (res judicata); *see also Sutherland*, 223 Ill.2d at 207 (collateral estoppel); *citing People v. Pawlaczyk*, 724 N.E.2d 901 (Ill. 2000), *quoting Vroegh v. J&M Forklift*, 651 N.E.2d 121 (Ill. 1995). Under Illinois law, "the denial of [a] defendant's motion to dismiss the indictment [is] not a final and appealable order" but is, in fact, an interlocutory order. *See People v. Taylor*, 286 N.E.2d 122, 123 (Ill. App.Ct. 1972). And, Illinois courts have held that

7

"[r]es judicata does not apply to an interlocutory order." *Id.*; *citing Quinn v. McMahan*, 40 Ill. App. 593; *see also People v. 1965 Chevrolet*, 240 N.E.2d 169 (1st Dist. 1968).

Because the Illinois Appellate Court has recognized an "exceptional circumstances" exception to the doctrine of *res judicata* similar to the "peculiar circumstance" exception to the doctrine of collateral estoppel set forth in *People v. Hopkins* and because Illnios Courts do not apply *res judicata* when a dismissal is not final and appealable, it would result in manifest injustice to bar Lyttle's claims on the basis of *res judicata. See Savory*, 435 N.E.2d at 229-30; *citing Hopkins*, 284 N.E.3d at 285. Therefore, Lyttle's motion to reconsider dismissing Counts I and IV on the basis of *res judicata* is granted.

IV. <u>Lyttle's facial challenge to Subsection (d) fails as a matter of law because the ordinance is constitutional as written</u>.

    A) <u>Background</u>

This Court originally dismissed Counts I and IV as barred by the doctrines of *res judicata* and collateral estoppel on November 20, 2007; and as a result, this Court did not consider Defendants' other arguments in support of dismissing Counts I and IV. Because the Court is now reconsidering that dismissal, the Court will now consider the constitutional arguments presented by the parties.

Lyttle mounts only facial challenges to Subsection (d) arguing it impermissibly infringes on the First Amendment's protection of freedom of speech and assembly without serving any compelling state interests; it is vague; it confers upon third parties a "hecklers' veto"; it is over broad; it fails to ensure that authorities to do not abuse their discretion; it fails to require authorities issuing the order to disperse to provide those affected a reasonable opportunity to comply; and it fails to specify what acts must be committed by three or more persons in order to the justify an order

8

to disperse. Cplt., Count I, ¶¶ A-G. Lyttle contends that he was arrested for violating Subsection (d) while he was exercising his First Amendment rights in a public forum, and thus, Lyttle believes that his constitutional rights were violated.

Subsection (d), the City's disorderly conduct ordinance, provides in pertinent part:

"A person commits disorderly conduct when he knowingly: (d) Fails to obey a lawful order of dispersal by a person known by him to be a peace officer under circumstances where three or more persons are committing acts of disorderly conduct in the immediate vicinity, which acts are likely to cause substantial harm or serious inconvenience, annoyance or alarm..."

The test that a facial challenge must meet is demanding. "A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). When a statute is reasonably capable of a construction compatible with the Constitution, courts are required to so construe it in that way. *See St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 780 (1981). "Even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *citing Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984). This Court considers these requirements in turn.

    A)    <u>Subsection (d) is a content neutral, reasonable time, place, and manner regulation of conduct.</u>

The first consideration is whether Subsection (d) is content neutral. "The principal inquiry in determining content neutrality in speech cases generally, and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward Rock*, 491 U.S. at 791. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. *Id.*; *citing Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47-48 (1986). Government regulation of expressive activity is content neutral so long as it is "justified without reference to the content of the regulated speech." *Id.*; *citing Community for Creative Non-Violence*, 468 U.S. at 293; *Heffron*, 452 U.S. at 648 (*quoting Virginia Pharmacy Bd.*, 425 U.S. at 771; *see Boos v. Barry*, 485 U.S. 312, 320-321 (1988). The City's disorderly conduct ordinance does not identify any message nor does it challenged the content of speech. Instead, it targets conduct that is disruptive. Because the Ordinance does not restrict any particular message or form of expression, Subsection (d) is content-neutral.

Additionally, Subsection (d) is a reasonable time, place, and manner regulation of conduct. Subsection (d) constrains the ability to stand in the vicinity of three or more people who are creating a serious disturbance after a peace officer has ordered a lawful dispersal. Lyttle alleges that the anti-war demonstration included at least "some 800 citizens" and took place at the corner of Oak Street and Michigan Avenue in downtown Chicago. Insomuch as the subsection incidentally restricts speech at the time and location of a disturbance, the ordinance serves a significant interest of regulating street traffic and assuring public safety. *See e.g. Cox v. Louisiana*, 379 U.S. 536, 554-55 (1965) ("[T]he State has a legitimate interest in enforcing its traffic laws and its officers were entitled to enforce them free from possible interference or interruption from bystanders, even those

10

claiming a third-party interest in the transaction.") ; *Accord Grayned v. City of Rockford*, 408 U.S. 104, 115-16 (1972) ("A demonstration or parade on a large street during rush hour might put an intolerable burden on the essential flow of traffic, and for that reason could be prohibited").

Because Subsection (d) is content-neutral, intermediate scrutiny applies. *See Turner Broadcasting System, Inc. v. Federal Communications Comm'n*, 512 U.S. 622, 662 (1994) (intermediate scrutiny applies to interpretation of an ordinance that is content neutral and imposes an incidental burden on speech). Lyttle briefly suggests that this Court should apply "strict scrutiny" as the Court did in *Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150 (2002). *Watchtower Bible*, however, involved a statute that prevented all door-to-door canvassing without first registering and receiving a permit; whereas Subsection (d) is violated only when an individual fails to adhere to a peace officer's order to disperse. Therefore, this content neutral ordinance requires the Court to apply an intermediate level of scrutiny when determining its constitutionality.

      B)    <u>Subsection (d) is narrowly tailored to serve a significant governmental interest</u>.

Subsection (d) is narrowly tailored and is not substantially broader than necessary to achieve the government's interest. A statute is narrowly tailored if it targets and eliminates no more than the exact source of the "evil" it seeks to remedy. *Frisby v. Schultz*, 487 U.S. 474, 484-85 (1988); *citing City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808-810 (1984). Put another way, the statute is narrowly tailored "[s]o long as the means chosen [by the City] are not substantially broader than necessary to achieve the government's interest." *Ward*, 491 U.S. at 799. The statute need not be the "least restrictive or the least intrusive means." *Id*.

11

This Court finds that Subsection (d) is narrowly tailored because there are at least six conditions that limit its reach: 1) a disturbance "likely to cause substantial harm or serious inconvenience, annoyance or alarm" must be in progress; 2) the disturbance must involve three or more persons; 3) the disturbance must be in the immediate vicinity of the peace officer; 4) the peace officer must issue an order to disperse; 5) the person subject to the dispersal order must know the order is being issued by a peace officer; and 6) the person must "knowingly" fail to obey the order. See Chicago Mun. § 8-4-010(d). Although Lyttle asserts that the ordinance fails because it does not require that a disturbance be imminent, the ordinance is only invoked when an officer observes circumstances where three or more persons *are committing* acts of disorderly conduct in the immediate vicinity which are likely to cause substantial harm or serious inconvenience, annoyance or alarm. Chicago Mun. § 8-4-010(d) (emphasis added). As such, Subsection (d) is narrowly tailored because it eliminates the exact source of the "evil" it seeks to remedy-- a group of persons causing substantial harm, serious inconvenience, or alarm in the immediate vicinity of a peace officer that refuses to disperse after a lawful order of dispersal has been given.

In 1992, the Supreme Court affirmed the constitutionality of a disorderly conduct statute similar to the City's ordinance and even broader than Subsection (d). *See Colten v. Kentucky*. 407 U.S. 104 (1972). In that case, the Plaintiff was arrested for disorderly conduct after he failed to obey an officer's request to leave a congested roadside where his friend was being ticketed. *Id.* at 110. The ordinance applicable to Colten's arrest provided:

> (1) A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> > (f) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse.

*Id.*; citing Ky.Rev.Stat.§ 437.016(1)(f)(Supp. 1968). The Court affirmed both Colten's conviction and the constitutionality of the Kentucky ordinance. In doing so, the Court rejected Colten's "overbreadth argument" finding that "individuals may not be convicted under the Kentucky statute merely for expressing unpopular or annoying ideas." *Id*. Rather, the statute had effect only in situations when "the individual's interest in expression, judged in the light of all relevant factors, was 'minuscule' compared to a particular public interest in preventing that expression or conduct at that time and place." *Id.* at 111.

Similarly, Subsection (d) also leaves open ample alternative channels of communication. Lyttle himself pleaded that protesters were allowed to gather at the plaza on March 20, 2003 to protest the war. Protesters could have continued to exercise their First Amendment rights provided that they continued to conduct themselves in a manner that did not cause substantial harm, serious inconvenience, annoyance, or alarm. Not only does Lyttle fail to plead facts supportive of his assertion that the ordinance does not allow protesters to disperse and assemble elsewhere; the plain wording of the ordinance contradicts that interpretation. Subsection (d), on its face, allows persons an opportunity to comply with the order of dispersal prior to arrest because it requires that a person "knowingly" violate the order. Accordingly, a person expressing his First Amendment rights who is lawfully ordered to disperse may reconvene elsewhere and continue to exercise his First Amendment rights.[4]

Subsection (d) also serves a significant government interest. Lyttle has pleaded that the

---

[4] Although Lyttle claims that no dispersal order was given, Lyttle has not set forth an "as applied" challenge to the statute. Certainly, Lyttle has successfully pleaded a cause of action under Section 1983, false detention and arrest, and malicious prosecution to challenge the City's motives behind his arrest assuming Lyttle's allegations are true under the 12(b)(6) standard. However, these facts do not bear upon a facial challenged to the constitutionality of a content-neutral ordinance.

demonstration took place at the intersection of Oak Street and Michigan Avenue– a busy intersection in downtown Chicago. Courts have upheld similar statutes and ordinances which concern the safety, order, and convenience of other citizens, enforcing traffic laws, and avoiding congestion. *See Heffron*, 452 U.S. at 653-4 (a statute is constitutional if it protects the State's interest in avoiding congestion and maintaining orderly movement of patrons); *Colten*, 407 U.S. at 110 (1972) (a statute is constitutional if it protects the state's "legitimate interest in enforcing [its] traffic laws..."); *Cox v. New Hampshire*, 312 U.S. 569, 574; (municipalities may impose regulations to assure the safety and convenience of public highways). Subsection (d) serves the interest of protecting the public from disturbances that threaten substantial harm, serious annoyance, or alarm and this Court finds that doing so, especially at the intersection of Oak Street and Michigan Avenue, a congested area of a large City, serves a significant government interest. *See Heffron*, 452 U.S. at 653-54; (ensuring the safety and convenience of public places serves a substantial governmental interest); *see also Grayned v. City of Rockford*, 408 U.S. 104, 116-117; *Lehman v. City of Shaker Heights*, 418 U.S. 298, 302-303 (1974) (consideration of a forum's special attributes is relevant to the constitutionality of a regulation since the significance of the governmental interest must be assessed in light of the characteristic nature and function of the particular forum involved).[5]

C) <u>Subsection (d) does not allow a "Heckler's Veto".</u>

Lyttle next contends that Subsection (d) confers upon third parties a "hecklers' veto" which is law enforcement criminalizing otherwise legal, First Amendment protected conduct. *See Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123 (1992). The "heckler's veto" label fails to

---

[5] Lyttle cites *Terminiello v. Chicago*, 337 U.S. 1 (1949) in support of his assertion that Subsection (d) does not serves a significant governmental interest. *Terminiello* is distinguishable because that case involved speech that incited the public to anger, invited dispute, or created a disturbance. *Terminiello*, 337 U.S. at 4. In contrast, this ordinance is content-neutral.

define this ordinance because Subsection (d) is content-neutral and the "heckler's veto" doctrine applies solely to content-based restrictions on speech. *See Terminiello*, 337 U.S. at 4-5; *Reno v. ACLU*, 521 U.S. 844, 880 (1997); *Church of the Am. Knights of the Ku Klux Klan v. City of Gary*, 334 F.3d 676, 689-81 (7th Cir. 2003).

D) Subsection (d) is not impermissibly vague.

Lyttle argues that Subsection (d) is impermissibly vague as to what conduct it forbids so that persons of common intelligence must necessarily guess at its meaning. Lyttle also contends that the ordinance fails to give persons fair warning as to what conduct is forbidden. Cplt. ¶ 19B. When assessing whether Lyttle has stated a valid claim in his Complaint regarding the impermissibly vague nature of Subsection (d), this Court must make two determinations: first, the court must determine whether the penal statute defines "the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited"; and second the court must determine whether the statute is enforced in a manner that encourages arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

1. The ordinance gives clear notice of the conduct prohibited.

Subsection (d) clearly defines the prohibited conduct. A person must fail to disperse when ordered by a police officer, when there are three or more people committing acts of disorderly conduct in the immediate vicinity, before he can be arrested. The statute defines disorderly conduct as acts that are likely to cause substantial harm or serious inconvenience, annoyance or alarm to others. An ordinary person can understand what is prohibited by this statute. *See United States v. Lanier*, 520 U.S. 259, 265 (1970).

The *Colten* Court rejected the contention that the Kentucky disorderly conduct statute was

void for vagueness. 407 U.S. at 110. It reasoned, "the statute authorized conviction for refusing to disperse with the intent of causing inconvenience, annoyance, or alarm." *Id.* Like the *Colten* ordinance, Subsection (d) authorizes conviction for knowingly failing to obey a lawful order of dispersal after committing acts that are likely to cause substantial harm or serious "inconvenience, annoyance, or alarm." Arguably, the *Colten* ordinance is broader than Subsection (d) because a person will not be arrested for merely causing inconvenience, annoyance, or alarm, but rather will only be arrested after doing so in the immediate vicinity of a peace officer, with three or more persons, and only after knowingly disobeying a lawful order of dispersal. Citizens will have no difficulty in understanding the statute.

The narrowly-defined situation of an ongoing disturbance that threatens substantial harm, serious inconvenience, annoyance, or alarm distinguishes Subsection (d) from the gang loitering statute in *Chicago v. Morales*, 527 U.S. 41 (1999). The gang loitering ordinance addressed in *Morales* banned any public presence involving "no apparent purpose" and relied upon the police officer's subjective belief that someone in the loitering group was a criminal street gang member. *Id.* at 47. The right to loiter is constitutionally protected conduct. *Id.* at 53. Subsection (d), however, does not allow officers to order dispersal of individuals who are merely loitering. Subsection (d) governs "disorderly conduct" as defined in the ordinance, which is "likely to cause substantial harm or serious inconvenience, annoyance, or alarm." Lyttle does not allege that disorderly conduct, the underlying offense in Subsection (d), is constitutionally protected.

        2.    <u>The language of Subsection (d) discourages arbitrary and discriminatory enforcement</u>.

Subsection (d) also ensures that the police officers cannot choose to enforce the ordinance in an arbitrary or discriminatory manner. The police officer must observe someone who is in the

midst of committing disorderly conduct and then the officer must order the individual(s) to disperse. Before ordering the individual to disperse, the officer must identify himself as a police officer. Once a lawful order of dispersal is given, the officer may only arrest the individual if he or she "knowingly" fails to obey the order. Despite Lyttle's arguments, the ordinance does not equate disorderly conduct with a failure to obey an order to disperse. Rather, Subsection(d) separately defines what is considered to be "disorderly conduct" and requires the peace officer to issue a lawful order to disperse. An officer cannot arrest the individual until that individual "knowingly" fails to obey the order.[6]

Despite Lyttle's arguments, Subsection (d) establishes minimal guidelines for law enforcement distinguishing it from the *Morales* gang loitering ordinance. The ordinance in *Morales* allowed officers to order individuals to disperse when they appeared to be loitering for with no apparent purpose. *Id.* at 62. The Supreme Court found that the "'no apparent purpose' standard for making that decision [was] inherently subjective because its application depend[ed] on whether some purpose [was] 'apparent' to the officer on the scene." *Id.* Subsection (d), however, only allows officers to give a dispersal order if the individual is currently committing acts which are "likely to cause substantial harm or serious inconvenience, annoyance, or alarm." Only after the individual refuses to obey a lawful dispersal order is the officer allowed to arrest. There is a

---

[6] In the context of other disorderly conduct and similar statutes, the Supreme Court has recognized that the standards of enforcement must be less precise than for other types of criminal or quasi-criminal charges. For example, in *Smith v. Goguen*, 415 U.S. 566, 581 (1974), the Court held:

> There are areas of human conduct where, by the nature of the problems presented, legislatures simply cannot establish standards with great precision. Control of the broad range of disorderly conduct that may inhibit a policeman in the performance of his official duties may be one such area, requiring as it does an on-the-spot assessment of the need to keep order. *Cf. Colten v. Kentucky*, 407 U.S. 104 (1972).

significant difference between an officer who is allowed to order someone to disperse because he does not perceive a purpose for the individual's conduct and an officer who is observing actual conduct and determines that the conduct is likely to cause harm.

V.  Conclusion

For the reasons stated, this Court finds that Subsection (d) is constitutional as written. Lyttle has failed the demanding challenged of establishing that "no set of circumstances exists under which the Act would be valid." *See Salerno*, 481 U.S. at 745.[7] Therefore, Counts I and IV are dismissed with prejudice.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date:   March 13, 2008

---

[7] Subsection(d) has been upheld by several Illinois Supreme and Appellate Court decisions. *See City of Chicago v. Weiss*, 281 N.E.2d 310, 313-14 (Ill. 1970); *City of Chicago v. Greene*, 264 N.E.2d 163, 166 (Ill. 1970); *City of Chicago v. Jacobs*, 263 N.E.2d 41, 43 (Ill. 1970); *City of Chicago v. Fort*, 262 N.E.2d 473, 475 (Ill. 1970). The language of the ordinance is broader than the language upheld as constitutional in *Colten v. Kentucky*, 407 U.S. at 110-111, has been endorsed by the American Law Institute, and appears in the Model Penal Code. *See* Model Penal Code (U.L.A.) § 250.1(2).