IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDY THAYER, | ) | |
| Plaintiff, | ) ) ) | No. 07 C 1290 |
| v. | ) ) | |
| RALPH CHICZEWSKI, et al. | ) ) | |
| Defendants. | ) ) | |
| and | ) ) | |
| BRADFORD LYTTLE, | ) ) | No. 07 C 1406 |
| Plaintiff, | ) ) | |
| v. | ) ) | Judge John W. Darrah |
| JOHN KILLACKEY, et al. | ) ) | Magistrate Judge Arlander Keys |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed a civil rights action against the City of Chicago and several Chicago Police Officers, alleging that the Defendants violated their constitutional rights by arresting them on March 19, 2005, near the corner of Michigan Avenue and Oak Street in Chicago. At the time of the arrests, Plaintiffs had assembled with others to voice their dissent about the war in Iraq and the City's denial of a permit to march down Michigan Avenue.

In addition to the claim that their arrests were unconstitutional, Plaintiffs allege that the City has a general policy of suppressing protests against the Iraq war. Plaintiffs

claim that this policy has existed since at least March 2003, that Defendants pursue this policy by deploying large numbers of officers dressed in riot gear to anti-war demonstrations, and that the City targeted Plaintiffs for arrest on March 19, 2005, in retaliation for their criticism of the City's protest policy.

Following his March 19th arrest, Plaintiff Andy Thayer was tried for disorderly conduct and resisting arrest, and was subsequently convicted. Mr. Lyttle faired better; following his arrest, the Circuit Court of Cook County issued a directed finding of Not Guilty.

In the present civil action, Plaintiffs have asked the City to produce surveillance documents, created by Defendants, of meetings and gatherings of individuals, regarding the planning of anti-war protests, demonstrations, or marches in 2003, 2004 and 2005. Plaintiffs contend that these documents are relevant to their claims that the Defendants have a policy of suppressing First Amendment anti-Iraq war speech, and that Defendants have unfairly targeted them for their political views. Defendants counter that the information sought by Plaintiffs is not relevant to their claims, is protected by the law enforcement privilege, and should not be ordered to be produced.

**DISCUSSION**

**I. Relevance**

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

Defendants urge the Court to deny the Plaintiffs' attempts to obtain the files in question, because they are not relevant to the claims at hand. Defendants argue that Plaintiffs seek the information only to prove the Defendants' motive or intent, which has no bearing on the Plaintiffs' due process claims. Defendants explain that, because probable cause is an absolute bar to Plaintiffs' First Amendment retaliation and malicious prosecution claims, and the evidence shows that the officers had probable cause to arrest these Plaintiffs, the officers' subjective intent is irrelevant. *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989) (probable cause bars malicious prosecution claim); *Trepanier v. City of Blue Island*, 2008 WL 4442623, *6-7 (N.D. Ill. Sept. 29, 2008) (probable cause bars First Amendment retaliation claim); *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1247 (7th Cir. 1994) ("even if the officers did have bad motives for arresting Sheik-Abdi, the existence of probable

cause for an arrest would preclude a § 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution.")

While the Defendants correctly note that Mr. Thayer has been tried and convicted, thereby furnishing convincing evidence of probable cause, he is not the only Plaintiff in this lawsuit. In his Complaint, Mr. Lyttle asserts that, following his arrest, the Circuit Court of Cook County directed a Not Guilty verdict in his case. Thus, there is no compelling evidence of probable cause with respect to Mr. Lyttle.

Moreover, the fact that a criminal defendant is convicted does not necessarily mean that there was probable cause to arrest the defendant in the first instance. See, e.g., Corbett v. Biggs, 2005 Wl 991903, at *7-8 (N.D. IL.. Mar. 23, 2005)[1] (noting instances when a jury's finding of guilt is not conclusive of the existence of probable cause.) And Mr. Thayer's conviction- and the issue of probable cause-- arguably has little bearing on whether the Defendants' intent and motive are relevant to Plaintiffs' equal protection claims and efforts to establish punitive damages and Monell liability[2]. See Marshall v. Teske,

---

[1] Although Defendants allude to the issue in their Reply brief, neither of the parties has properly briefed the issue of whether Mr. Thayer's conviction collaterally estops him from asserting that there was no probable cause to arrest him.

[2] Defendants attack Plaintiffs' claim that they require evidence of intent to establish their Monell claims, by arguing that Monell claims are not a separate cause of action; rather, Plaintiffs must first prove a specific violation of their

4

284 F.3d 765, 772 (7th Cir. 2002).

Having determined that Mr. Thayer's conviction does not render these files necessarily irrelevant, the Court concludes that, with respect to the more recent investigative files, these files are clearly relevant to the underlying events giving rise to this lawsuit. For example, First Amendment Investigation File 116-2004-01 A mentions that, on March 16, 2004, a meeting was facilitated by a man known as "ANDY", that the group had applied for and been denied a permit to protest, and notes that the police have had past experience with Andy as an outspoken critic of the police department's infiltration of past meetings. Similarly, First Amendment Investigation File 116-2005-01 discusses the march and rally planned for March 19, 2005 at the corner of Michigan and Oak Streets in Chicago, and discusses the fact that Mr. Thayer instructed participants to disobey police.

With respect to the earlier files, the Court notes that these are the same files that Judge Nolan ordered produced in *Vodak v. City of Chicago,* No. 03 C 2463, 2004 WL 2032147 (N.D. Ill. Sept. 8, 2004). Admittedly, the connection to the present suit is somewhat remote, but the evidence is relevant to

---

constitutional rights before they can recover against the City on their *Monell* claim. While Defendants might be inclined to presume that Plaintiffs will not prevail, at this stage of the litigation, the Court is not inclined to base its rulings on such an unfounded assumption. The *Monell* claims are an active part of this lawsuit and Plaintiffs are entitled to discovery on the matter at this time.

5

Plaintiffs' claim that the Defendants were unfairly targeting and investigating them and their affiliations because of their political beliefs. The Court agrees that these files are relevant to Plaintiffs' *Monell* claim that the Defendants had a widespread practice of suppressing the type of expression in which Plaintiffs were engaged. As such, the Court concludes that the files[3] are relevant to Plaintiffs' claims.

## II. The Law Enforcement Investigatory Privilege

Next, Defendants assert that, even if the investigative files are relevant to Plaintiffs' claims, they are protected by the law enforcement investigatory privilege.

The purpose of the law enforcement investigatory privilege is "to prevent 'the harm to law enforcement efforts which may arise from public disclosure of . . . . investigative files.'" *Lewis v. City of Chicago*, No. 04 C 3904, 2004 WL 2608302, at *1 (N.D. Ill. Nov. 16, 2004)(quoting *Hernandez v. Longini*, No. 96 C 6203, 1997 WL 754041, *3 (N.D. Ill. Nov. 13, 1997)). The

privilege

---

[3] Judge Nolan's decision in *Vodak v. City of Chicago,* more expressly parses the investigative files under review in a detailed manner. This detailed discussion was required, because the parties directed their arguments to specific sections of the files, and the concerns implicated therein. These concerns have not been raised by the parties in the instant case. In addition, there was no discussion in *Vodak* as to whether the Defendants had cleared the required procedural hurdle for raising the privilege-a requirement the Defendants made no effort to satisfy here, thereby negating application of the privilege.

"preserves the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation and prevents interference with the investigation." *Doe v. Hudgins*, 175 F.R.D. 511, 514 (N.D. Ill. 1997).

Nevertheless, the privilege is not absolute. *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997). The party claiming the law enforcement privilege bears the burden of justifying the application of the privilege. *Doe v. Hudgins,* 175 F.R.D. 511, 514 (N.D. Ill. 1997). Before the privilege will apply, a responsible official must lodge a formal claim of privilege after actual personal consideration, "specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege." *Hernandez v. Longini,* 1997 WL 754041, at * 4(N.D. Ill. Nov. 13, 1997).

In this case, the City has failed to satisfy the privilege's threshold procedural requirement of lodging a formal claim of privilege, after actual personal consideration by a responsible official. *Lewis,* 2004 WL 2608302, at *2 (finding that the privilege could not apply because the threshold procedural requirements had not been satisfied. ) The fact that the Defendants have raised the existence of the privilege in their briefs is not sufficient; Courts have routinely rejected the

assertion that a party's brief may be considered a formal assertion of privilege where there is no indication that a responsible official determined that the privilege should be raised. *See, e.g., Id.; Hernandez,* 1997 WL 754041, at *4. Because the Defendants have failed to satisfy this threshold requirement, the privilege does not apply.

But even if the Court were to reach the merits of this issue, on balance, the Court would conclude that the privilege does not apply. In analyzing whether the privilege applies, courts typically[4] balance the claimed need for secrecy against a plaintiff's need for access to the information. *Kampinen v. Individuals of Chicago Police Dept.,* No. 00 C 5867, 2002 WL 238443, at *4 (N.D. Ill. Feb. 19, 2002). The Court may consider a number of factors in making this determination, including: 1) whether disclosure will thwart governmental process by discouraging citizens from coming forward with information; 2) the impact on those citizens that have come forward with information; 3) the degree to which government self-evaluation and improvement will be chilled; 4) whether the information is factual or evaluative; 5) whether the party seeking discovery faces potential criminal charges; 6) whether the department's

---

[4] Although the Seventh Circuit has stated that the privilege analysis requires "balancing," the Court has not specifically embraced this ten factor test. Nevertheless, numerous courts look to these factors when undertaking such analysis.

8

investigation is ongoing; 7) whether any interdepartment proceedings have or may arise from the investigation; 8) whether the Plaintiffs' suit was brought in good faith and/or lacks merit; 9) whether the discovery sought is available through other means; and 10) the importance of the information sought to the Plaintiffs' case. *Kampinen,* 2002 WL 238443, at *4.

On balance, these factors weigh in favor of disclosure. First, the Court cannot conclude that disclosure will thwart governmental processes by discouraging citizens from giving information. While the City claims that the files "did not rely exclusively on information provided by private citizens," the City has failed to identify *any* information within the requested files that was generated by private citizens. Moreover, a review of the files indicates that the information was gathered largely by law enforcement personnel; the Court's review of the files has not uncovered any witness statements.

Because the information in these files was compiled without the assistance of private citizens or confidential informants, the second factor also weighs in favor or disclosure; absent reliance upon such individuals, there is little concern about revealing their identities. Nevertheless, the files do disclose the identity of both undercover officers, as well as the targets of the Defendants' investigation, who have no direct connection to this lawsuit. The Court finds that the identity of these

individuals should remain confidential and be redacted from the investigative files.

The third factor also weighs in favor of disclosure. The Court acknowledges that law enforcement agencies have a compelling need to retain confidentiality over police methods and procedures. However, the City's practice of having officers infiltrate organizations is hardly a secret. *See* 2/19/04 Chicago Suntimes' article "Police Infiltration of Protest Groups Has Civil Rights Activists Fuming."

The Fourth factor presents a closer call. While there is a great deal of factual information in the files, there is a significant amount of evaluative commentary, which weighs against disclosure. *See, e.g., Jones v. City of Indianapolis,* 216 F.R.D. 440, 446 (S.D. Ind. 2003). However, as Judge Nolan observed in *Vodak v. City of Chicago,* 2004 WL 2032147, at *6, "the fact that the actual reports generated in the investigations may contain evaluative material is not an absolute bar to disclosure. Such information may be highly relevant to defendants' state of mind." Plaintiffs claim that this is particularly true here, because Defendants' state of mind is important to proving their First Amendment and malicious prosecution claims. The Court agrees, and finds that the existence of evaluative commentary should not bar disclosure in this case.

Because the investigations have been completed and there are no outstanding criminal proceedings remaining, the Fifth factor weighs in favor of disclosure as well. The names of undercover officers should be redacted, however, to protect their identities, in the event of future investigations.

The remaining factors also weigh in favor of disclosure. Defendants have not identified any inter-departmental proceedings that will or even may be implicated by the disclosure of these files. And Defendants have not argued that the Plaintiffs' lawsuits were brought in bad faith or are frivolous.

Finally, Plaintiffs have presented a compelling argument that these investigative files provide perhaps the only documentary evidence of Defendants' state of mind with regard to the anti-war groups and protestors. As discussed, the Defendants' state of mind is an element of Plaintiffs' First Amendment, equal protection and malicious prosecution claims, as well as to Plaintiffs' efforts to establish *Monell* liability and entitlement to punitive damages. Some of the information contained in the files consists of fliers and articles, which were apparently compiled and distributed by anti-war activists. Obviously, the content of these documents bears less significantly upon Plaintiffs' claims. But the Court can only conclude that the files in their entirety— including the compilation of the collected written materials, combined with the

reports, describing infiltrated meetings and participants, and the requests to open and then close the investigations- are relevant to Plaintiffs' claims and contain documentary evidence that will not likely be found from other sources.

## III. The Consent Decree

Finally, Defendants argue that disclosure of these investigative files would be inappropriate, as the investigations were conducted pursuant to the Modified Consent Decree, entered in Case Nos. 74 C 3268 and 75 C 3295. The Decree enjoins the City from conducting illegal investigations relating to the First Amendment, but expressly allows for "reasonable investigative or law enforcement activities that are permitted by the First Amendment." Decree at 3.

The Court notes that Judge Nolan's *Vodak* decision addressed and rejected this precise argument. Upon review of the Consent Decree, the Court finds no reason to part ways with Judge Nolan's rationale. While the Decree contemplates confidentiality of certain information relating to the investigations, the Decree does not prevent the disclosure of relevant investigative material in a civil case. As noted above, the disclosure of these investigative files will not implicate the Decree's concerns with revealing the identifies of confidential informants or compromising or interfering with ongoing investigations- the files are devoid of statements from confidential informants, and

there are currently no related ongoing investigations. As such, the Court rejects the Defendants' claim that disclosure of these investigative files would be contrary to the terms of the Consent Decree.

## CONCLUSION

For the reasons explained above, the Court denies the Defendants' Motion in Support of the Nondisclosure of Documents Submitted to the Court for *In* Camera Review. The Defendants shall, however, redact the names of all undercover officers, as well as accompanying identifying information. Moreover, the Court finds that the files should be disclosed only to the Plaintiffs' counsel in this case, for this case. These materials are not to be disclosed to the litigants, and are not to be used in other matters.

Dated: July 20, 2009

ENTER:

ARLANDER KEYS
UNITED STATES MAGISTRATE JUDGE