UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDY THAYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 C 1290 |
| v. | ) | |
| | ) | |
| RALPH CHICZEWSKI, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BRADFORD LYTTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 C 1406 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| JOHN KILLACKEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Andy Thayer and Bradford Lyttle filed separate lawsuits against the City of Chicago and various officers of the Chicago Police Department ("CPD") following their arrests at a March 19, 2006, anti-Iraq war event. Before the Court is Defendants' motion for summary judgment on both complaints.

## UNDISPUTED FACTS

Thayer is a well-known Chicago activist who has had a leading role in organizing anti-Iraq war protests since 2003. (Pls.' 56.1(b)(3) at ¶ 1.) Thayer is a leader of the Chicago Coalition Against War and Racism ("CCAWR"). (*Id.* ¶ 2.) Lyttle is an 81-year-old Chicago resident who has been active in anti-Iraq war protests. (*Id.* ¶ 8; Defs.' 56.1(a)(3) at ¶ 3.)

Defendants Ralph Chiczewski, John Killackey, Jessica Jones and Eugene Shields were officers of the CPD. (Defs.' 56.1(a)(3) at ¶¶ 2, 4.) On March 15, 2005, Chiczewski and Killackey were Deputy Chiefs of the Central Control Group and Area 1 Patrol, respectively. Jones and Shields were assigned to a tactical team in District 23. (*Id.* at ¶¶ 2, 4.)

On January 3, 2005, Thayer, on behalf of CCAWR, applied for a permit for 2,000 to 4,000 people to assemble on Saturday, March 19, 2005, at the corner of Oak Street and Michigan Avenue in Chicago and to parade down Michigan Avenue and then on other streets to reach Federal Plaza in downtown Chicago. (*Id.* at ¶ 29.) On January 7, 2005, the City of Chicago ("the City") denied Thayer's application but offered an alternative assembly point at Washington Square Park and a march down Clark Street to Federal Plaza. (*Id.* ¶¶ 30, 31). This assembly point was three blocks west and one block south of Thayer's desired starting point at Oak and Michigan. (*Id.* ¶ 31.) Thayer and CCAWR appealed the denial of the application to the Mayor's License Commission, which, after a two-day hearing, affirmed the denial on February 4, 2005. (*Id.* ¶¶ 32, 33.) Thayer and CCAWR filed suit in federal court on February 22, 2005, seeking a preliminary injunction to allow the March 19, 2005 parade. (*Id.* ¶ 34.) The presiding judge, Judge Hibbler, held a preliminary injunction hearing on March 9 and 11, 2005 and, at the conclusion of Plaintiff's evidence on March 11, 2005, granted the City's Rule 52(c) motion for judgment on partial findings, finding, inter alia, that the City did not violate the plaintiffs' first amendment rights. (*Id.* ¶¶ 35, 36.)

After Judge Hibbler denied the motion for a preliminary injunction, the City renewed its offer of an alternative assembly point. (*Id.* ¶ 44.) On March 14, 2005, the CPD sent a letter to Thayer, stating that while Thayer had not accepted the City's offer of an alternative parade route,

the City wished to accommodate marches by allowing assembly at Washington Square Park and a parade on Clark Street to Federal Plaza. (*Id.* ¶ 44.) In the week prior to March 19, 2005, the City posted a notice on the CPD's website stating that no permit had been granted for assembly at Oak and Michigan or for the march down Michigan Avenue. (*Id.* ¶ 45.) The posting contained the offering of the alternative assembly point at Washington Square Park. (*Id.* ¶ 45.)

Up to Friday, March 18, 2005, Thayer and CCAWR, in internet postings and fliers, called for assembly at Oak and Michigan on March 19, 2005. (*Id.* ¶ 45.) CCAWR distributed a flyer headlined "Please circulate widely" and an email captioned "Please Forward Widely," both stating "Lack of Permit Won't Stop Anti-War Protest." (*Id.* ¶ 47.) CCAWR's website continued to list Oak and Michigan for the assembly point of the march. (*Id.* ¶ 47.) The materials noted that arrests were possible since a permit had not been obtained. (*Id.* ¶ 47.) A media alert prepared in part by Thayer in the week before March 19, 2005, called the assembly at Oak and Michigan "an informational rally" and a "press conference." (*Id.* ¶ 48.)

On the morning of March 19, 2005, Thayer attended a related event in front of the Cardinal's Mansion. (*Id.* ¶ 50.) Chiczewski, who was also present at the event and who knows Thayer from other demonstrations, told Thayer and the assembled protesters that Washington Square Park could be used as an assembly point for the planned anti-war parade. (*Id.* ¶ 50.) Chiczewski also warned Thayer about going through with the planned gathering at Oak and Michigan.[1] (*Id.* ¶ 50; Pls.' 56.1(b)(3) at ¶ 22.)

---

[1] The exact content of Chiczewski's warning is disputed. Defendants claim that Chiczewski stated that if Thayer went to Oak and Michigan and a large demonstration there created safety concerns, Chiczewski would arrest Thayer. Plaintiffs claim that Chiczewski told Thayer he would be arrested if he showed up at Oak and Michigan at all.

3

Killackey, who was in overall command of the officers at Oak and Michigan on March 19, 2005, had about 200 officers under his command. (Pls.' 56.1(b)(3) at ¶ 20.) As protesters assembled at Oak and Michigan on the morning of March 19, 2005, Killackey approached them and explained there was a place set aside for them at Washington Square Park. (Defs.' 56.1(a)(3) at ¶ 51.) The CPD posted signs at Oak and Michigan explaining the lack of a permit for an assembly and march from Oak and Michigan and noting the alternative assembly point at Washington Square Park. (*Id.* ¶ 52.) The CPD also handed out fliers to the crowd gathering at Oak and Michigan containing the same information and also warning of the possibility of arrest. (*Id.* ¶ 53.)

By noon, the crowd at Oak and Michigan had grown.[2] (*Id.* ¶ 57.) At 11:55 a.m., 11:58 a.m. and 12:02 p.m., Killackey read a "dispersal order"[3] to the crowd over a bullhorn. (*Id.* ¶ 62.) Killackey gave other warnings and instructions to disperse over the bullhorn, such as, "If you do not leave now, you will be arrested," "Alright, let's move out," "Let's go" and "Time to move; time to move." (*Id.* ¶ 63.)

Thayer arrived at the corner of Oak and Michigan by cab at noon on March 19, 2005. (*Id.* ¶ 64.) Thayer was on the corner of Oak and Michigan when Killackey read the dispersal

---

[2]Estimates cited by the parties ranged from "50-60 people" to "several hundred people." Most estimates cited fell between 150 and 200 people. (Defs.' 56.1(a)(3) at ¶ 57; Plaintiffs' response to Defs.' 56.1(a)(3) at ¶ 57.)

[3]Plaintiffs quibble with Defendants' use of the term "dispersal" in referring to the order, pointing out that the word "disperse" appears nowhere in the order. However, the order stated that there was no permit to assemble and Oak and Michigan or to march down Michigan Avenue, that such assembly and march was unlawful and that if protesters violated the law they would be arrested. Given the contents of the order and the context in which it was read, the Court will use Defendants' terminology when referring to the order.

order for the third time and when Killackey gave his subsequent warnings and instructions. (*Id.* ¶ 65.) After Killackey read the dispersal order for the third time, Bill Massey spoke over a loudspeaker that Thayer was holding. (*Id.* ¶ 66.) During Massey's speech, the crowd that had gathered at Oak and Michigan began to move west on Oak Street towards Washington Square Park. (*Id.* ¶ 66.) Killackey, on his bullhorn, told the crowd, "Time to move; time to move." (*Id.* ¶ 66.)

After Massey spoke, Thayer began addressing the crowd over the loudspeaker. (*Id.* ¶ 67.) As Thayer was speaking, the crowd continued to move west, and a line of police officers behind the crowd approached the area where Thayer was standing. (*Id.* ¶ 67.) Chiczewski saw Thayer addressing the crowd on the loudspeaker and moved toward him through the crowd. (*Id.* ¶ 68.) When Chiczewski reached Thayer, he placed Thayer under arrest. (*Id.* ¶ 70.)

After Thayer was arrested, the Reverend Paul Jakes took the loudspeaker Thayer had been holding and addressed the crowd. (*Id.* ¶ 73.) A police officer asked which direction Jakes intended to go, and Jakes indicated that he would go west on Oak Street. (*Id.* ¶ 73.) The crowd then began to disperse. (*Id.* ¶ 74.)

Lyttle arrived at the corner of Oak and Michigan around 11:30 a.m. on March 19, 2005. (*Id.* ¶ 77.) After Killackey read the dispersal order for the third time, Lyttle remained standing within a few feet of Thayer, holding a sign on a stick while Thayer spoke. (*Id.* ¶ 79.) As Thayer was arrested and led to a police vehicle parked on Michigan Avenue, Lyttle also moved towards Michigan Avenue until he was stopped by a line of police. (*Id.* ¶ 80.) Killackey, after clearing the crowd west on Oak Street, returned to the police line along Michigan Avenue. (*Id.* ¶ 81.) Killackey ordered the officers to move the crowd west, telling them, "If they don't move, arrest

them." (*Id.* ¶ 81.) The crowd slowly moved west, but Lyttle remained standing in place until he was eventually surrounded by the police as the police moved west with the crowd. (*Id.* ¶ 82.) Killackey ordered Shields to arrest Lyttle. (*Id.* ¶ 84.) At the time of his arrest, Lyttle was the only person standing among the police officers near Michigan Avenue and was attempting to march down Michigan Avenue. (*Id.* ¶ 85.) Other protesters had moved west towards Washington Square Park. (*Id.* ¶ 85.)

Shields did not encounter Lyttle until Killackey ordered Shields to arrest him. (*Id.* ¶ 88.) Lyttle was placed in custody by Shields alone. (*Id.* ¶ 89.) Jones did not see Lyttle until he was in the custody of Shields and being led to a police vehicle. (*Id.* ¶ 89.) Jones did not make any arrests, witness any arrests or assist with any arrests on March 19, 2005.[4] (*Id.* ¶ 89.)

Thayer was charged with disorderly conduct and resisting arrest and was issued a civil citation for conducting a parade without a permit. (*Id.* ¶ 72.) A jury trial was held, and Thayer was found guilty of disorderly conduct and resisting arrest. (*Id.* ¶ 94.) Thayer's post-trial motion for verdict JNOV, arguing that there was no probable cause for his arrest, was denied by the court. (*Id.* ¶ 95.) Thayer initially appealed his conviction but later withdrew his appeal. (*Id.* ¶ 96.)

Thayer was given an administrative hearing on the charge of conducting a parade without a license. (*Id.* ¶ 97.) At the hearing, Thayer argued he was participating in a press conference, not a parade. (*Id.* ¶ 97.) The Administrative Law Officer ("ALO") found Thayer liable for violating the ordinance because "a rally was taking place" and traffic was blocked on "one lane

---

[4]Plaintiffs have conceded that they have no viable claims against Jones. Therefore, Defendants' motion for summary judgment is granted with respect to Jones on that basis.

of Oak and one lane of Michigan." (*Id.* ¶ 98.) The ALO rejected Thayer's claim that he was conducting a "press conference" because he found it to be a "semantical difference" by which Thayer was attempting to conduct what "was originally intended" "by labeling it something other than what it was." (*Id.* ¶ 98.) Thayer filed suit for administrative review of the ALO's decision by the Cook County Circuit Court. (*Id.* ¶ 99.) The Cook County Circuit Court affirmed the ALO's order. (*Id.* ¶ 99.)

Lyttle was charged with disorderly conduct for refusing to obey a lawful order to disperse. (*Id.*¶ 90.) At Lyttle's trial, the judge dismissed the case at the conclusion of the prosecution's case. (*Id.* ¶ 100.)

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

7

475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

**ANALYSIS**

Following separate orders granting in part and denying in part Defendants' motions to dismiss, Plaintiffs' remaining claims are: (1) First Amendment Retaliation (Thayer and Lyttle, Count II); (2) False Arrest (Lyttle, Count V); (3) Equal Protection (Thayer, Count IV); and (4) Malicious Prosecution (Lyttle, Count VII).[5]

*Probable Cause*

Because a number or Plaintiffs' claims depend, or arguably depend, on whether Defendants had probable cause for their arrests, the Court will address that question first.

Police "have probable cause to arrest an individual when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed or was committing an

---

[5] Plaintiffs have also asserted separate counts, entitled "Monell Claim," "Respondeat Superior" and "Indemnification. (Thayer, Counts V, VI, VII; Lyttle, Counts VI, VIII, IX.)

8

offense." *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) (internal quotations and modifications omitted). Probable cause is an objective inquiry; thus, the Court "evaluates probable cause not on the facts as an omniscient observer would perceive them, but rather as they would have appeared to a reasonable person in the position of the arresting officer." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (internal quotations omitted).

Defendants argue, and Plaintiffs do not dispute, that due to his conviction on the disorderly conduct charge, Thayer is barred by collateral estoppel from asserting that Defendants lacked probable cause to arrest him. *See Currier v. Baldridge*, 914 F.2d 993, 996 (7th Cir. 1990) (plaintiffs' previous conviction collaterally estopped the plaintiff from reasserting a lack of probable cause where conviction supported arrest); *Patterson v. Leyden*, 947 F.Supp. 1211, 1217 (N.D. Ill. 1996) (where arresting officer testifies at trial, proof of the crime is *ipso facto* proof of probable cause); *Shkrobut v. City of Chicago*, 2005 WL 2787277 (N.D. Ill. Oct. 24, 2005) (collateral estoppel applies where there is "no difference between the evidence used to determine probable cause and that used to determine guilt"). Thus, collateral estoppel and Thayer's conviction for disorderly conduct establishes that Defendants had probable cause for his arrest.

The parties do dispute, however, whether Defendants had probable cause to arrest Lyttle. Defendants argue that police had probable cause to arrest Lyttle for disorderly conduct. Chicago Municipal Code § 8-4-010 states, in relevant part, that a person commits disorderly conduct when he knowingly:

> (a) Does any act in such unreasonable manner as to provoke, make or aid in making a breach of peace; or
>
> . . .

> (d) Fails to obey a lawful order of dispersal by a person known by him to be a peace officer under circumstances where three or more persons are committing acts of disorderly conduct in the immediate vicinity, which acts are likely to cause substantial harm or serious inconvenience, annoyance or alarm.

Defendants argue that Lyttle committed disorderly conduct when he failed to obey police orders to disperse and, instead, remained at the intersection of Oak and Michigan and attempted to march down Michigan Avenue.

Plaintiffs counter with several arguments. First, Plaintiffs argue that Lyttle had not been ordered to disperse because Killackey's statements to the crowd were not an order to disperse. This argument rests primarily on Plaintiffs' observation that the word "disperse" does not appear in the statement the Killackey read. This argument is not persuasive. As noted above, Killackey told the protesters that there was no permit to assemble at Oak and Michigan or to march down Michigan Avenue, that the assembly and march were unlawful and that those who violated the law would be arrested. Killackey's statement, which he read three times in the course of seven minutes, especially when considered in conjunction with his other statements to the crowd – "If you do not leave now, you will be arrested," "Alright, let's move out," "Let's go" and "Time to move; time to move" – was clearly an order to the people assembled to leave the area, to disperse.

Furthermore, the relevant question in the probable-cause inquiry is whether a reasonable person in the position of the arresting officer would have believed that the protesters had been ordered to disperse. A reasonable person, hearing Killackey's statements as they were spoken, rather than reading a copy of the statement after the fact, would not note the absence of any particular word. Rather, he would understand the statements to be an order to leave the area. That the vast majority of the protesters dispersed from the intersection of Oak and Michigan

10

upon hearing Killackey demonstrates this was the clear import of the statement. Thus, the Court rejects Plaintiffs' argument that Lyttle was not ordered to disperse.[6]

The Court also rejects Plaintiffs' argument that probable cause did not exist because Lyttle had not heard Killackey's statements and, therefore, did not knowingly disobey the order to disperse. Again, what matters is what a reasonable person in the position of the arresting officer would believe. Here, the arresting officers had no reason to believe that Lyttle had not heard Killackey's statements, which were made using a bullhorn. Lyttle's mental state, to the extent it could not be perceived by the arresting officers, is completely irrelevant to the question of probable cause.

Plaintiffs next argue that Lyttle was, in fact, dispersing – specifically, that he was dispersing down Michigan Avenue. Plaintiffs argue that police did not instruct protesters to disperse in any particular direction and, thus, Lyttle was free to "disperse" down Michigan Avenue. Plaintiffs' argument is specious. Lyttle's actions at the time demonstrated a clear intent to disobey police orders and persist in the planned march down Michigan Avenue. Indeed, Lyttle asserts that, just before he was arrested, he told the police that he intended to walk down Michigan Avenue. And Lyttle still maintains that it was his intent to march down Michigan Avenue with whomever would go with him. This fact cannot be reasonably disputed: Lyttle was not trying to disperse; rather, he was trying to take part in an unpermitted parade down Michigan Avenue.

---

[6]The trial court judge in the state proceeding also apparently reached this conclusion, finding that a person of Lyttle's "age and appearance" did not have an adequate opportunity to disperse, as the basis of the dismissal of Lyttle's case.

11

Finally, Plaintiffs argue that at the time of Lyttle's arrest, protesters were no longer blocking the sidewalk and that, thus, there was no reason why Lyttle could not remain where he was standing or proceed down Michigan Avenue. Again, Plaintiffs' argument is not convincing. Lyttle was given a lawful order to disperse and chose to confront a police line blocking his access to Michigan Avenue. Failure to obey that order constituted disorderly conduct, providing Defendants probable cause to arrest.

Therefore, the Court finds that Defendants had probable cause to arrest both Thayer and Lyttle.

*False Arrest/Malicious Prosecution*

Because Defendants had probable cause to arrest Lyttle, Lyttle cannot prevail on his claims for false arrest and malicious prosecution. *See Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009) (probable cause is a complete defense to malicious prosecution suits); *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007) (probable cause is an absolute defense to false-arrest claims). Therefore, Defendants are entitled to summary judgment on both of Lyttle's claims.

*Retaliatory Arrest*

Both Thayer and Lyttle have brought a claim for retaliatory arrest in violation of their rights under the First Amendment. To establish a *prima facie* case for retaliatory arrest in violation of the First Amendment, a plaintiff must establish that: (1) he engaged in constitutionally protected speech and (2) that speech was a substantial or motivating factor in the decision to arrest. *Morfin v. City of East Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003) (*Morfin*). If plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show he would

have taken the same action in the absence of the protected speech. *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 670 (7th Cir. 2009) (*Valentino*). If the defendant carries this burden, the plaintiff may still reach trial by showing that the defendant's reasons were merely a pretext. *Valentino*, 575 F.3d at 670; *Morfin*, 349 F.3d at 1005 (applying the Seventh Circuit's burden-shifting test for employment cases to First Amendment retaliatory arrest claims).[7]

Defendants argue that a finding of probable cause is an absolute bar to a retaliatory arrest claim. If police have probable cause to arrest, Defendants argue, any other motive the officers may have had is irrelevant.

Neither the Seventh Circuit nor the Supreme Court has answered the question of whether a plaintiff must prove the absence of probable cause to prevail on a retaliatory arrest claim. *See Abrams v. Walker*, 307 F.3d 650, 657 (7th Cir. 2002) (*Abrams*) (specifically declining to rule "that the existence of probable cause is a complete defense to a First Amendment retaliation claim in the context of an arrest"). Recently, in *Hartman v. Moore*, 547 U.S. 250 (2006) (*Hartman*), the Court held that a plaintiff alleging retaliatory *prosecution* must plead and prove the absence of probable cause. District Courts in the Seventh Circuit have reached different conclusions as to what effect *Hartman* should have on the question of whether probable cause bars suits for retaliatory arrest. *See Trepanier v. City of Blue Island*, 2008 WL 4442623, at *6-7 (N.D. Ill. Sept. 29, 2008) (holding probable cause bars First Amendment retaliatory arrest

---

[7]Defendants, citing *Water v. City of Chicago*, 580 F.3d 575 (7th Cir. 2009), argue that after the Supreme Court's recent opinion in *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343 (2009), Plaintiffs must show that their protected conduct was the but-for reason for their arrests. However, as Plaintiffs correctly point out, at the summary judgment stage, their burden is to present evidence from which a reasonable jury could find causation. *See Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009).

claim); *Baldauf v. Davidson*, 2007 WL 2156065, at *4 (S.D. Ind. July 24, 2007) (*Baldauf*) (same); *Webb v. City of Joliet*, 2006 WL 3692405, at *4 (N.D. Ill. Dec. 11, 2006) (same); *Gullick v. Ott*, 517 F.Supp.2d 1063, 1071-72 (W.D. Wis. 2007) (holding probable cause does not bar First Amendment retaliatory arrest claim).

It is unnecessary to determine whether probable cause is an absolute bar to First Amendment retaliatory arrest claims because, as explained below, Plaintiffs' claims fail even if probable cause is not a bar. Thus, assuming that probable cause is not a bar, the Court turns to whether Plaintiffs have established a *prima facie* case for retaliatory arrest in violation of the First Amendment. Both Plaintiffs clearly meet the first requirement of having engaged in constitutionally protected speech. Therefore, the question is whether they have shown that their speech was a substantial or motivating factor in the decision to arrest.

Turning first to Lyttle, Defendants argue that he cannot make this showing because he presents no evidence that he was arrested because of his speech. Defendants contend, rather, that Lyttle was arrested because he disobeyed a lawful order to disperse. The undisputed facts support Defendants' argument. The vast majority of the protesters at Oak and Michigan obeyed the dispersal order and were not arrested, even though they were engaging in essentially identical speech as Lyttle. Lyttle chose not to obey the order by remaining in place and was arrested. Lyttle's only evidence that he was arrested because of his speech is that other individuals, shoppers, tourists, etc., were allowed to proceed south on Michigan Avenue while he alone was stopped and arrested. Lyttle argues that this proves he was arrested because he was carrying an antiwar sign. Lyttle's argument fails, however, because the individuals who were allowed to proceed south on Michigan Avenue, non-protesters, had not been given a lawful order to

14

disperse. Thus, while Lyttle would prefer to single himself out as the only individual who attempted to walk south who was arrested – supposedly because he was carrying a sign – he is more appropriately described as the only protester who chose to disobey the police order as the rest of the protesters dispersed as ordered. Thus, Lyttle can produce no evidence that he was arrested because of his speech.

Turning to Thayer, Defendants likewise argue that he cannot satisfy the second element of the *prima facie* case, that he was arrested because of his speech. Thayer admits that Defendants had probable cause to arrest him for disorderly conduct for refusing to disperse. However, Thayer presents no evidence that Defendants arrested him because of his speech. Thayer alleges that Chiczewski testified at his deposition that he arrested Thayer because he was the "leader" of the antiwar movement. What Chiczewski actually said was that earlier in the day he had asked Thayer to protest at Washington Square Park instead of at Oak and Michigan because Thayer was the "leader of the group." (Chiczewski dep. at 153:22-154:5.) Taking away Plaintiffs' misquotation of Chiczewski's deposition, Plaintiffs are left with merely unsupported speculation as to Defendants' motivation to arrest Thayer. Furthermore, that so many other protesters engaged in substantially similar speech as Thayer at Oak and Michigan belies Thayer's claim that his speech was the reason for his arrest.

Therefore, because Plaintiffs can produce no evidence that their speech was a substantial or motivating factor in Defendants' decisions to arrest, Defendants are entitled to summary judgment on Plaintiffs' First Amendment Retaliation claims.

*Equal Protection*

Thayer alleges a "class of one" equal protection claim. To prove such a claim, Thayer must show that (1) he was intentionally treated differently from other similarly situated individuals; and (2) there is no rational basis for the difference in treatment or the cause of the differential treatment is a totally illegitimate animus toward him. *Woodruff v. Mason*, 542 F.3d 545, 554 (7th Cir. 2008). Thayer argues that Massey and Jakes, who spoke on the megaphone immediately before and after him, were similarly situated to Thayer and that they were not arrested. Thayer claims there was no rational basis to arrest him but not Massey and Jakes and that Chiczewski has an illegitimate animus toward Thayer because he is a well-known political activist and leader of the antiwar movement. However, as Defendants point out, Plaintiffs develop only the former of these two options – lack of rational basis – and offer no evidentiary support or legal analysis regarding the latter – that Chiczewski had an illegitimate animus towards Thayer.

This failing turns out to be fatal to Thayer's equal-protection claim. In *Hilton v. City of Wheeling*, 209 F.3d 1005 (7th Cir. 2000) (*Hilton*), the Seventh Circuit discussed the difference between alleging lack of rational basis and illegitimate animus in an equal-protection claim stemming from police action:

> "If a merely unexplained difference in police treatment of similar complaints made by different people established a prima facie case of denial of equal protection of the laws, the federal courts would be drawn deep into the local enforcement of petty state and local laws. Repeating what we said in our opinion in *Olech* [*v. Village of Willowbrook*, 160 F.3d 386 (7th Cir.1998) (*Olech*)], and Justice Breyer in his concurring opinion in the [*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)], we gloss 'no rational basis' in the unusual setting of 'class of one' equal protection cases to mean that to make out a prima facie case the plaintiff must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated

16

> to the duties of the defendant's position. We described the class of equal
> protection cases illustrated by *Olech* as 'vindictive action' cases and said that they
> require 'proof that the cause of the differential treatment of which the plaintiff
> complains was a totally illegitimate animus toward the plaintiff by the defendant.'
> [*Olech*,]160 F.3d at 388."

*Hilton*, 209 F.3d at 1008. Here, Plaintiffs have not shown any totally illegitimate animus on the part of Chiczewski. Rather, all Plaintiffs can establish is that Chiczewski decided to arrest an individual who was disobeying a lawful order to disperse and not to arrest others. Under *Hilton*, that showing fails to establish an equal protection claim.

Furthermore, in *United States v. Moore*, 543 F.3d 891 (7th Cir. 2008) (*Moore*), the Seventh Circuit noted that "allowing a remedy under the equal protection clause for merely irrational and wholly arbitrary adverse treatment by government, without proof of something more (such as illegitimate animus), would open breathtaking vistas of liability." *Moore*, 543 F.3d at 899 (internal citations omitted). There are countless situations, e.g. traffic enforcement, in which police arrest some lawbreakers but not others. An equal protection jurisprudence in which every such arrest is a ticket to federal court on an equal protection theory is not sustainable. *See Bell v. Duperrault*, 367 F.3d 703, 712 (7th Cir. 2004) (Posner, J., concurring).

Because Thayer has alleged only the lack of any rational basis for his arrest, vis-a-vis similarly situated protesters, and has not shown any illegitimate animus, Defendants are entitled to summary judgment on Thayer's equal protection claim.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted.

Dated: 3/31/10

                                              JOHN W. DARRAH
                                              United States District Court Judge